```
                 UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK


In re:                           :
                                    Docket #1:16-cv-06099-
 SHIM-LARKIN,                    : AJN-KNF

                 Plaintiff,      :

   - against -                   :

 CITY OF NEW YORK,               : New York, New York
                                   November 21, 2017
                 Defendant.      :

----------------------------------- : PHONE CONFERENCE

                   PROCEEDINGS BEFORE
                 THE HONORABLE KEVIN N. FOX,
         UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:           HEENA SHIM-LARKIN, PRO SE
                         260 West 153rd Street - Apt. 7H
                         New York, NY  10039
                         646-763-1668

For the Defendant:       NEW YORK CITY LAW DEPARTMENT
                         BY:  DOMINIQUE F. SAINT-FORT, ESQ.
                         100 Church Street
                         New York, NY  10007
                         212-356-2444




Transcription Service:  Carole Ludwig, Transcription Services
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

```
 1                         PROCEEDINGS                    3

 2          THE CLERK:  Heena Shim-Larkin v. City of New

 3  York, case No. 16-cv-6099.  Ms. Shim-Larkin and counsel,

 4  please state your names for the record.

 5          MS. HEENA SHIM-LARKIN:  My name is Heena Shim-

 6  Larkin.

 7          MS. DOMINIQUE SAINT-FORT:  Dominique Saint-Fort

 8  for the City of New York.

 9          HONORABLE KEVIN N. FOX (THE COURT):   Good

10  afternoon.  This is Judge Fox.  I want to address a number

11  of writings that have come to me, letters from Ms. Shim-

12  Larkin dated November 6, 2017; October 24, 2017; October

13  17, 2017; and then September 20, 2017; and also a writing

14  from defendant's counsel dated November 16, 2017,

15  regarding the time for a deposition for Ms. Shim-Larkin,

16  an extension of time for a deposition.

17          So with respect to the letters written by

18  Ms. Shim-Larkin, there were not responsive writings

19  submitted by the defendant to those writings.  But let me

20  begin with the September 20, 2017, document in which

21  Ms. Shim-Larkin requested communications -- data regarding

22  communications and correspondence between the city's law

23  department and its police department.

24          For those communications a privilege log was

25  prepared.  The privilege log I find is inadequate in that
```

1                              PROCEEDINGS                    4

2   it doesn't provide a level of details about the writings;

3   they're basically email messages is my recollection such

4   that one could, based solely on the entry and the logs be

5   able to challenge the asserted privilege.  In all

6   instances, I think, save one, it is alleged that the

7   withheld writing is covered by the work-produce doctrine;

8   and in one instance, the attorney-client privilege is also

9   asserted.  So there'll have to be a revised log prepared

10  with sufficient information so that one can know exactly

11  what is being held -- withheld so that an adequate

12  challenge can be made based on the privilege asserted.

13          There was an interrogatory respecting 311

14  complaints that Ms. Shim-Larkin crafted.  The

15  interrogatory is not narrowly tailored to obtain

16  information about the 311 complaint or complaints that are

17  germane to this action.  So the objection by the defendant

18  is sustained.  This was the subject of discussion

19  previously during a conference where it was suggested that

20  Ms. Shim-Larkin should try to recraft and more narrowly

21  tailor the interrogatory.

22          There was a request for the full text of a

23  September 28, 2000, closing report by the city's

24  department of investigation, and there was an objection

25  lodged by the defendant to providing the full text of that

```
 1                            PROCEEDINGS                    5
 2   document.  But the objection was not made timely, so the
 3   objection is waived.  This, the waiver of objection, was
 4   also the subject of a previous conference and an order by
 5   the Court directing the defendant to make responses to
 6   discovery demands that had been made by Ms. Shim-Larkin
 7   without objections because the response had come untimely.
 8   I note in various writings that are the subject of today's
 9   conference that Ms. Shim-Larkin makes reference to that
10   order, which barred the defendant from lodging objections
11   to certain discovery demands that she had made previously.
12            I want to turn now to the request about the
13   absence of a videotape from the first floor of the 13th
14   Police Precinct.  There was an affidavit submitted by the
15   defendant to address the absence of a tape.  The affidavit
16   that was submitted garnered a protest from Ms. Shim-Larkin
17   because it lacked detail, and she highlighted the types of
18   information that was lacking from the affidavit that would
19   enable her to understand more fully whether a tape
20   existed, what happened to it, and so forth.  I think to
21   remedy the deficiencies, the defendant should provide to
22   Ms. Shim-Larkin a more detailed affidavit respecting the
23   absence of the videotape and responding to the specific
24   lapses in information that Ms. Shim-Larkin highlighted.
25            MS. SAINT-FORT:  Your Honor, if I may inquire
```

```
 1                         PROCEEDINGS                    6
```

 2   about that ruling?  The affidavit says that there was

 3   no -- that there is no recording of that area, the 13th

 4   Precinct, in existence and that there is no policy

 5   regarding surveillance camera recordings in the first

 6   floor of the 13th Precinct.  So if I could --

 7            THE COURT:  Well, that language was somewhat

 8   troubling to me because it seemed to limit things.

 9   There's no policy regarding the first floor, suggesting

10   there's perhaps a policy that would encompass the first

11   floor and more.  And it's that lack of specificity in that

12   affidavit that caused the protest by Ms. Shim-Larkin and

13   also prompted me to take the position that I just

14   indicated to you.  We need to be careful and precise in

15   the language being used in response to the discovery

16   demands -- both parties -- so that you can gather complete

17   information and be ready for trial or motion practice, if

18   there needs to be motion practice, before trial.  So --

19            MS. SAINT-FORT:  Okay, so just so I understand,

20   the greater detail that you're suggesting that the

21   defendants provide in response to Ms. Shim-Larkin is with

22   respect to the 13th Precinct?

23            THE COURT:  Well, I don't have in front of me --

24   there were about three or four exemplars of more detailed

25   information that Ms. Shim-Larkin had raised.  And I

```
 1                           PROCEEDINGS                    7
 2  thought they were all appropriate and should be addressed.
 3  I don't have them at my fingertips.  So if you take a look
 4  at that and respond to those, I think you'll provide the
 5  level of detail that will enable the parties to move on
 6  from that issue.
 7           Ms. Shim-Larkin had raised a question about the
 8  form that appears as Bates No. NYPD 002, which is a form
 9  that was completed when she went to the police precinct
10  and encountered a PAA who took a statement of a complaint
11  from her.  And this was the subject of discussion back in
12  the spring during our conference, and I went back to the
13  record of that conference because my recollection of what
14  I directed the parties with respect to that matter was
15  different from the texts allegedly quoted in writings from
16  both parties.
17           And during that conference I directed that the
18  defendant provide the plaintiff any directive for
19  completing that form, that is, the Bates-numbered form
20  that I indicated a moment ago.  I didn't know whether
21  there were directives that exist, in particular, that
22  inform the police and their personnel how to complete that
23  form, but if there is, that should come to Ms. Shim-Larkin
24  and only that so that it will be clear how it is that the
25  PAA responded to the various inquiries that appear on that
```

2   form, with the guidance that any directive about

3   completing such a form provides.  Of course, there's an

4   interaction with Ms. Shim-Larkin, and there may have been

5   statements made by Ms. Shim-Larkin to the PAA that also

6   result in certain entries on that form, but back in May,

7   the directive was to find if one exists or more than one

8   directive or directives that instruct how the form should

9   be completed.  And that should be surrendered to Ms. Shim-

10  Larkin.

11          MS. SAINT-FORT:  Your Honor, if I may?  The

12  defendants have provided Ms. Shim-Larkin with the patrol

13  guide that guides the completion of the form.  We provided

14  her with that information.

15          In addition, there was some questions that were

16  asked of Ms. Shim-Larkin during her deposition regarding

17  her interest in this information because, if you look at

18  the complaint, it does state in the area where -- the

19  question is whether the complainant is fearful for her

20  life, indicating yes or no.  There in that box it

21  indicates yes, that she was fearful for her life.  And

22  Ms. Shim-Larkin indicated during her deposition that her

23  interest in the policies regarding how an officer

24  determines whether one is fearful for their life or not

25  was not necessarily in reference to this case but prior

PROCEEDINGS                    9

complaints that she had filed with issues regarding her

ex-husband and her informing officers in those situations

that she was fearful for her life, with those officers

indicating no.  So the information that she's seeking is

totally irrelevant to this case.  And it's the defendant's

position that we provided her with the patrol guides that

guides the completion of the form.

THE COURT:  Well, that was not information that

was before me previously.  The focus back in May was on

the discussion or the interaction that Ms. Shim-Larkin had

with the PAA in the precinct and not any discussion about

previously encounters with police personnel involving her

former spouse and his conduct with her.

So this is new information, and, again, back in

May the focus was only on the one document generated

during that encounter with the PAA in the precinct.  And

my directive back in May was limited to that and it's

still limited only to that encounter and not any other

encounters that Ms. Shim-Larkin may have had based upon

her relationship with her former spouse.

MS. SAINT-FORT:  Defendants --

MS. SHIM-LARKIN:  Your Honor -- your Honor, I

want to make it clear on the record that the defendant's

concept of deposition testimony wholly mischaracterized my

```
 1                              PROCEEDINGS                    10

 2   testimony.  She asked me if that's what I wanted, though,

 3   so I -- that's no, that's not what I was looking for.

 4   What I was looking for is not that.  I clearly said no,

 5   and she's completely mischaracterizing my deposition

 6   testimony.

 7             And the other thing is she doesn't want to do

 8   meet-and-confer through my phone conversation because she

 9   wants to do meet-and-confer through a deposition of me,

10   which is totally unfair.

11             THE COURT:  The next matter I want to raise is

12   the plaintiff's desire to examine 311 system calls, 154

13   unredacted 311 system complaint calls, to determine which

14   are relevant to her complaint.  I'm somewhat curious about

15   that.  I know that this matter of the 311 calls has

16   emerged through information exchanged during the pretrial

17   discovery phase of the litigation, and it's not

18   specifically referenced in the complaint that's

19   outstanding.

20             But, in any event, it is a matter that was the

21   subject of some discussion in the previous conference, and

22   I'm not altogether clear on why 154 calls and examination

23   of calls is pertinent in this circumstance, in this case.

24   So, Ms. Shim-Larkin, why is it that you say you need to

25   examine 154 calls?
```

```
 1                         PROCEEDINGS                  11

 2              MS. SHIM-LARKIN:  Your Honor?

 3              THE COURT:  Yes.

 4              MS. SHIM-LARKIN:  I request this because once I

 5   saw the redacted version, then I can see what the call is

 6   about.  It has brief description, such as, like,

 7   "Lifeguard arguing in front of kids."  So if I see the

 8   brief description there, I can tell if it's from someone I

 9   know or if it's -- I mean, if it's talking about the

10   instance I know or I object so I can tell -- I have pretty

11   much good sense of -- if we have the (indiscernible) log,

12   I know who made that call.  I can -- I think I can guess

13   who make that call.

14              So after I show the redacted version of the

15   (indiscernible) then I can further explain, oh, I think

16   this have something (indiscernible) in both the instance,

17   I can get more detail with that, for instance, and I can

18   get the caller ID, because it show the name and telephone

19   number and the address of the person who made that phone

20   call to 311.  But without, if I don't even know the

21   (indiscernible) of the call, then I don't know which call

22   is relevant or not.

23              THE COURT:  So the data that has been given to

24   you about the 311 complaint forms, if I'm understanding

25   you correctly, has the subject matter of the complaint
```

1                              PROCEEDINGS                      12

2    obscured so no one can know from reading the document what

3    the subject of the complaint is?

4              MS. SHIM-LARKIN:  Yes.

5              MS. SAINT-FORT:  Your Honor, if I could provide

6    some background?  The list of 154 phone calls are phone

7    calls that were 311 calls that were made between the time

8    period of plaintiff's employment with the Park Department.

9    And these are all phone calls that through the 311

10   database were transferred to the Department of Parks and

11   Recreation to respond to based on issues that occurred at

12   a Department of Parks and Recreation property.  What

13   defendant has done is, based on those responses, we've

14   provided plaintiff with all of the complaints that had to

15   do with Tompkins Square Mini Pool, where she worked.  All

16   154 phone calls do not pertain to Tompkins Square Mini

17   Pool; they pertain to Department of Parks and Recreation's

18   property in total.

19             So plaintiff has been provided with the

20   responsive complaints regarding Tompkins Square Mini Pool

21   during the time frame in which she was employed by Parks

22   and Recreation.

23             MS. SHIM-LARKIN:  Your Honor, that is not the

24   case because I received seven complaint reports from the

25   Department of Information Technology and

1                            PROCEEDINGS                    13

2   Telecommunications, and they gave me the random seven

3   complaint reports.  And some of the complaint reports,

4   they don't -- on the -- there's seven complaint reports I

5   received from Department of Information Technology and

6   four complaints from Department of Parks.  The seven

7   complaints was at random and four complaint was there

8   was -- appeared something at the location.  And in the

9   Location, when it says Tompkins, then that were given to

10  me, that's the four I received from Parks.  But in the

11  seven complaint reports I received from Department of

12  Information Technology, they -- in some of the forms, says

13  location of this was blank.

14          So some of the forms had Location field is

15  blank, that it can still be related to Tompkins Square.

16  Just because the location leaves the space blank doesn't

17  mean that it does not have to be Tompkins Square Park.

18  And then some of the form is a slightly different form; it

19  is not a DPR general intake form but it's a customer

20  comment.  And some of the 311 complaint reports are

21  customer comments from pages of different forms, and in

22  that form there's not even a field about location.

23          So even though they provided four complaint

24  reports which happened at Tompkins Square, it doesn't mean

25  that some of the customer comments -- maybe some of the

1                        PROCEEDINGS                14

2 customer comments are related to Tompkins Square Park but

3 it did not come up to search if they searched only

4 Locations is filled with Tompkins Square Park.  That's why

5 I need to see, like, other than those four complaint

6 reports.

7            THE COURT:  Of the seven reports that you say

8 you received from the Information Technology Department,

9 are you saying to me that there are seven independent of

10 the four that you received, or is there an overlap so that

11 there are only three complaints that are different?

12            MS. SHIM-LARKIN:  I do not understand the

13 question.

14            THE COURT:  All right, you have seven reports

15 from the Department of Information Technology.  Of those

16 seven, are four of them the same reports that you say you

17 got from the defendant during the pretrial discovery phase

18 of this lawsuit?

19            MS. SHIM-LARKIN:  No, no, what I'm trying to

20 say, the seven complaint reports I received from

21 Department of Information Technology, I received them

22 through FOIA requests, and it was before I even started

23 this lawsuit.  And so out of four complaint reports I

24 received from Parks Department, that's also through a FOIA

25 request.  I received them before I even started the

```
 1                          PROCEEDINGS                  15
 2   lawsuit.
 3            THE COURT:  Regardless of when you received
 4   them, are there four of the seven that are the same four
 5   that you received --
 6            MS. SHIM-LARKIN:  No, no.  I think --
 7            THE COURT:  So there are 11 reports?
 8            MS. SHIM-LARKIN:  No, it's not 11.
 9            THE COURT:  Well, seven plus four is 11.
10            MS. SHIM-LARKIN:  Four of ten.  I think maybe
11   one or two overlap, so maybe correct ten, I think so.
12            THE COURT:  Well, if two overlap, then you're
13   only talking about, instead of seven reports, five reports
14   that are different; is that correct?
15            MS. SHIM-LARKIN:  Yes.  But my point is that I
16   should have guessed -- I should have received that from
17   FOIA.  They just ignored my FOIA requests.
18            THE COURT:  Well, just a minute.
19            MS. SHIM-LARKIN:  And I --
20            THE COURT:  Just a minute.
21            MS. SHIM-LARKIN:  -- they ignored it.  And then
22   my point is that Rule 26 says that even the objections,
23   they have to be warranted by existing law; and if they
24   object, then it's not -- it's violating for them.
25            THE COURT:  Now, of the seven that you received
```

```
 1                       PROCEEDINGS                16
 2   from the Information Technology Department, you say that
 3   they are without indication of location.
 4            MS. SHIM-LARKIN:  Yes.
 5            THE COURT:  Okay, so how do you connect them to
 6   the pool where you worked in July and August of 2017?
 7            MS. SAINT-FORT:  2015.
 8            THE COURT:  2015 -- excuse me.
 9            MS. SHIM-LARKIN:  How do I connect it?
10            THE COURT:  Yes.  How do you know that they
11   arise out of the pool at Tompkins Square Park, the mini
12   pool, if there's no location associated with the seven?
13            MS. SHIM-LARKIN:  Oh, that's because I said the
14   Location field was blank, because I saw some complaints
15   the Location field was blank but in the field of employer,
16   some of them said Rockaway employee.  And then some of
17   them says in the Brief Description, in the Brief
18   Description there was like the hint of it was Coney Island
19   or in the Brief Description there was brief description
20   about location.
21            So I think maybe -- I think from other fields
22   such as Employee field or Brief Description field, I think
23   I can -- I think I can connect, if I get a hint from those
24   fields.  And some of them -- I believe some of the events
25   will be described very specific.  And it's very specific
```

```
 1                        PROCEEDINGS                 17

 2   enough for me to recollect my memory that I think I can do

 3   that.

 4            THE COURT:  Well, I don't see why you have to

 5   project.  You have seven reports; they don't say location,

 6   and if I'm understanding you correctly, some of them in

 7   the Location field is blank, but the text of the report

 8   suggests that the matters occurred in Coney Island or

 9   Rockaway, which has nothing to do with Tompkins Square

10   Park.  So once you eliminate those from the seven, how

11   many are related to Tompkins Square Park and how do you

12   know that?

13            MS. SHIM-LARKIN:  So what I'm trying to say is

14   (indiscernible) like all complaints against the

15   (indiscernible) but I do not receive those (indiscernible)

16   complaints to show that (indiscernible) response; they

17   just said it was not going to exist.  But I think it is

18   exist but they don't know if they exist because the

19   complaint is also complaint against them but they really

20   keep the appropriate record of it.

21            THE COURT:  Well, I was asking something

22   different.  I'm focusing on the seven documents you

23   received from the Information Technology Department in

24   which you told me the location of the incident that

25   prompted the complaint is blank, but there is something
```

```
 1                          PROCEEDINGS                 18

 2   written in connection with the specific complaint --

 3              MS. SHIM-LARKIN:  Again, I --

 4              THE COURT:  -- that identifies in some instances

 5   that the matter that prompted the complaint occurred in

 6   Coney Island or the Rockaways.  So when you remove from

 7   the seven complaints that pertain to, as far as you can

 8   tell, Rockaway, Coney Island or some other location other

 9   than Tompkins Square Park, how many of the seven, if any,

10   relate to Tompkins Square Park?

11              MS. SHIM-LARKIN:  The question is among those

12   seven complaint reports how many of them are related to

13   Tompkins Square Park?

14              THE COURT:  Yes.

15              MS. SHIM-LARKIN:  I think -- I don't remember;

16   maybe one or two.

17              THE COURT:  Okay.  So those, coupled with the

18   four that you've received, the other four, so that's about

19   six complaints you say would apply to Tompkins Square

20   Park, and you want to look at 154 other complaints so that

21   you can read the description of the complaint and from

22   that you hope to determine that the complaint is pertinent

23   to Tompkins Square Park although the defendants tell you

24   they have already isolated all of the reports that pertain

25   to Tompkins Square Park during July and August 2015, when
```

PROCEEDINGS                    19

1    you worked there; is that what you're telling me?

2           MS. SHIM-LARKIN:  Yes.

3           THE COURT:  Okay.  I don't see how going through

4    that exercise is proportional to the needs of this case,

5    and so I won't require that the 154 reports come to you

6    for examination.

7           In the October 17 writing that you submitted you

8    request, among other things, an extension of time to get

9    perhaps a forensic expert respecting a videotape.  Now,

10   you have a motion outstanding seeking that the Court

11   appoint an expert witness.  Are you abandoning that

12   motion?  Have you now decided that you're going to engage

13   expert witnesses --

14          MS. SHIM-LARKIN:  I have --

15          THE COURT:  -- on your own?

16          MS. SHIM-LARKIN:  -- that expert, Court to

17   appoint expert, I'm not abandoning that motion, your

18   Honor.

19          THE COURT:  Well, I don't understand, then, the

20   October 17 writing.  Are you looking to engage yourself a

21   forensic expert, or is this part of the motion for expert

22   witness or witnesses that you have pending?

23          MS. SHIM-LARKIN:  I didn't decide yet because

24   actually it's in relation to the pending motion that -- my

PROCEEDINGS                    19

1    you worked there; is that what you're telling me?

2           MS. SHIM-LARKIN:  Yes.

3           THE COURT:  Okay.  I don't see how going through

4    that exercise is proportional to the needs of this case,

5    and so I won't require that the 154 reports come to you

6    for examination.

7           In the October 17 writing that you submitted you

8    request, among other things, an extension of time to get

9    perhaps a forensic expert respecting a videotape.  Now,

10   you have a motion outstanding seeking that the Court

11   appoint an expert witness.  Are you abandoning that

12   motion?  Have you now decided that you're going to engage

13   expert witnesses --

14          MS. SHIM-LARKIN:  I have --

15          THE COURT:  -- on your own?

16          MS. SHIM-LARKIN:  -- that expert, Court to

17   appoint expert, I'm not abandoning that motion, your

18   Honor.

19          THE COURT:  Well, I don't understand, then, the

20   October 17 writing.  Are you looking to engage yourself a

21   forensic expert, or is this part of the motion for expert

22   witness or witnesses that you have pending?

23          MS. SHIM-LARKIN:  I didn't decide yet because

24   actually it's in relation to the pending motion that -- my

```
 1                         PROCEEDINGS                    20
 2   first set of interrogatories.  And if they answer my first
 3   set of interrogatories, then I don't have to.  So I --
 4             THE COURT:  You don't have to what?
 5             MS. SHIM-LARKIN:  -- I have no idea if I'm going
 6   to even try to actually find experts or not.  I'm not
 7   sure; it's hypothetical.
 8             THE COURT:  I'm sorry, I didn't understand what
 9   you were saying to me.  Could you repeat it, please?
10             MS. SHIM-LARKIN:  My motion -- what I just said?
11             THE COURT:  Yes.
12             MS. SHIM-LARKIN:  Because the expert witness
13   regarding the (indiscernible) expert witness, I'm not sure
14   if I need that expert witness or not because it's also
15   related to my first set of interrogatories.  Because in
16   the first set of interrogatories I requested -- one of the
17   interrogatory question asks for specific videos.  But I do
18   not get the answer; I only got the evasive answer.  So
19   it's pending motion -- if there's a pending motion, I
20   think it's letter I wrote on October 24.  So if they
21   answer my first of interrogatories like real answer, not
22   evasive answer, then I don't think I'm going to need the
23   expert witness -- expert witness regarding the
24   (indiscernible).
25             THE COURT:  Okay.
```

```
 1                        PROCEEDINGS                    21
 2          MS. SHIM-LARKIN:  I don't know if I actually
 3   need that or not.  I don't know yet.
 4          THE COURT:  All right.  Well, since you raise
 5   the October 24, 2017, writing, let me turn to that now.
 6   That's a motion to compel and for sanctions.  Local
 7   Rule 7.1(d), which permits letter motions, doesn't
 8   contemplate the type of relief that you were requesting
 9   through that letter, and you will have to make a formal
10   motion under Rule 37 or whatever other rules or statute
11   you think are appropriate to obtain the relief that is
12   discussed in the October 24, 2017, writing.
13          If you want to make such a motion, you should do
14   so on or before December --
15          MS. SHIM-LARKIN:  I do not understand.  If I do
16   make motion for sanction?
17          THE COURT:  Your letter motion dated October 24,
18   2017, seeks relief that is beyond that which is permitted
19   by letter motion under Local Rule 7.1(d) of the court.  So
20   if you want the type of relief you expressed in the
21   October 24 writing, you will have to make a formal motion
22   under Rule 37 or whatever other rules or statute you want
23   to make a motion to attempt to obtain that relief.
24          MS. SHIM-LARKIN:  The only thing -- because --
25   well, some of them are 26 and 37.  I mean, if it's for
```

```
 1                         PROCEEDINGS                  22
 2  1927, I understand, but I don't understand about Rule 26
 3  and 37.
 4           THE COURT:  Well, I am not here to give you
 5  legal advice, but your letter is a motion to compel, which
 6  is addressed by Rule 37; and you're seeking sanctions, and
 7  that's all discussed in that writing, but it's an improper
 8  vehicle, the letter motion, to obtain the type of relief
 9  you say you want through that letter.  And to obtain that
10  relief you have to make a formal motion, if you want.
11           MS. SHIM-LARKIN:  So the four part about
12  sanction?
13           THE COURT:  I'm sorry?  I didn't hear you
14  clearly.
15           MS. SHIM-LARKIN:  The four part of the sanction,
16  your Honor.
17           THE COURT:  I'm not --
18           MS. SHIM-LARKIN:  Four part of sanction.
19           THE COURT:  When you say the "four part," I
20  don't understand what you mean.
21           MS. SHIM-LARKIN:  The whole -- whole, the entire
22  part of sanction.
23           THE COURT:  Oh, yes?
24           MS. SHIM-LARKIN:  Okay.
25           THE COURT:  Not only that, you ask that certain
```

```
  1                          PROCEEDINGS                    23
```

  2   things be provided, that the Court compel the defendant to

  3   provide you answers to your interrogatories.  You want a

  4   judgment based on liability.  All of the things you raise

  5   in that letter have to be sought through a formal motion.

  6          MS. SHIM-LARKIN:  I see.  So the entire letter,

  7   your Honor?

  8          THE COURT:  All the relief you seek through that

  9   letter should come -- should be sought through a formal

 10   motion.

 11          MS. SHIM-LARKIN:  Okay.

 12          THE COURT:  So if you intend to make a motion,

 13   you should make the motion by the 8th day of December

 14   2017.

 15          MS. SHIM-LARKIN:  By -- schedule on is

 16   December 8?

 17          THE COURT:  2017.  If you elect to make a motion

 18   seeking the relief outlined in your October 24, 2017,

 19   letter.  And the response and the reply to the motion

 20   should be made in accordance with Local Civil Rule 6.1 of

 21   the court.

 22          Turning now to the November 6, 2017, writing,

 23   with respect to the demands Nos. 1 and 2 made by the

 24   plaintiff, the defendant cannot construe the plaintiff's

 25   document demands to permit the defendant to rewrite them

so that they conform to what the defendant believes the

demand should be and what the defendant wants to disclose.

So the plaintiff alleges that the responses to these

demands are in part boilerplate and not specific as

required by Rule 34.  And I agree with her that they are

not specific and do amount to a boilerplate response.

          Also, the defendant placed the temporal

limitation on the two demands other than the temporal

limitation that the plaintiff placed on her demands

without any explanation for doing so.  And that's not

proper.

          The plaintiff -- well, all parties, plaintiff

and defendant, are free to decide what information each

party wants that is, to the party's way of thinking,

relevant to the claims and defenses and should be pursued

in discovery.  And it's not the place of any party to

countermand the decisions made by the other about what

information is necessary for a particular party to either

prosecute or defend a case.  If the matters that are

sought are without the rules, then the matter can be

brought to the Court if the parties, after conferring, are

unable to resolve the matter themselves.  And then the

Court will determine whether the requested information is

within or without the applicable rules and will give the

1                           PROCEEDINGS                    25

2   parties direction.

3           MS. SAINT-FORT:  Your Honor, if I may?

4   Defendant's response to these communications, we did put a

5   temporal limitation on them in that plaintiff is requested

6   information for a two-and-a-half-year period where her

7   full period of employment with the City of New York was a

8   six-week period of the relevant summer, and this case was

9   a six-week period.  So it seems the request was quite

10  broad, and that's why we limited it to the time frame in

11  which she was working.

12          MS. SHIM-LARKIN:  Well, your Honor, I

13  (indiscernible) because that's a place that's concerning

14  plaintiff and/or Tompkins Square Mini Pool.  So if it's

15  concerning plaintiff, it doesn't matter when; it's still

16  relevant.

17          THE COURT:  As I indicated, no party should be

18  deciding for the other what the party's discovery demand

19  should be.  If there's a problem that one party believes

20  exists with respect to the other party's discovery

21  demands, you're to confer about that.  If the parties

22  cannot resolve it, the matter should be brought to the

23  Court, and the Court will give the parties directives.

24  But you can't unilaterally decide one party for the other

25  what that party should have to prosecute or defend in the

```
 1                          PROCEEDINGS                    26
 2   action.
 3           I want to move now to an objection the defendant
 4   lodged to a request for a complaint worksheet report
 5   No. 2015-009-04416, Bates No. NYPD 001 to 004.  The
 6   objection was lodged on relevance grounds, but it's not
 7   specific what it is that is not relevant in the view of
 8   the defendant.  That is a document it seems like pertains
 9   to the plaintiff's encounter at the precinct with a PAA,
10   as we discussed earlier in the conference.  And why is
11   that document not relevant and the request pertaining to
12   that document, that worksheet for the complaint report,
13   not relevant?
14           MS. SAINT-FORT:  Well, it's not relevant in that
15   plaintiff has the complaint in the matter.  This is not a
16   criminal case; this is a case of -- this is an employment
17   law case.  Plaintiff has been -- the complaint that
18   resulted from plaintiff going to the 13th Precinct and
19   lodging a complaint based on an encounter with her
20   coworker is the complaint that she received.  There are a
21   number of requests that plaintiff is making about the
22   police department, and it's turning this into a concern
23   about the police department, which is not the issue in
24   this case.
25           But beyond that, defendant has -- as we
```

PROCEEDINGS                      27

indicated, the plaintiff has looked into this document and
was searching for it.  It's been followed up on for a
number of weeks, and the information that I received just
this morning is that PAAs are civilian officers; they're
Police Administrative Assistants, and they're not assigned
memo books, which is the document that plaintiff is
seeking in this complaint report based on the guidelines
in the Patrol Guide.  So there is no memo book that is
associated with plaintiff's complaint.  The only document
that exists is the complaint.

            THE COURT:  I thought that Ms. Shim-Larkin --

            MS. SHIM-LARKIN:  I --

            THE COURT:  -- had moved beyond the request,
understanding that there was no memo book, and that's why
she wanted whatever materials are pertinent to this
worksheet, complaint worksheet, which is, I think,
attached to a part of the complaint report.  And this
report or complaint that results in this complaint report
arises out of the workplace encounters that are the
subject of this action.  So no one's claiming that it's a
criminal case, but Ms. Shim-Larkin went to the police as a
result of conduct she alleges was perpetrated against her
at her workplace and is part and parcel of her allegations
in this lawsuit about discrimination and all arising out

PROCEEDINGS                    28

of her encounters with her coworkers at the pool.  So I
think that the documents that she's seeking are certainly
relevant as described in her complaint.  So if they exist,
they should be provided to Ms. Shim-Larkin as quickly as
possible.

Just one moment.  I need to check my notes.

There was a reference about the retaining of
videos in this November 6 writing, but we discussed that
earlier.

Oh, yes, Ms. Shim-Larkin, you had complained
about the verifications that accompanied the interrogatory
answers, and I was somewhat puzzled by that because you
make reference to the pertinent rule that indicates that
the person answering an interrogatory must sign it.  But
you seem to take umbrage that the persons who signed it,
there should be additional people signing it, without any
indication that other persons were answering the
interrogatories.  So I was not clear why it is that you
think other people should be signing the interrogatories
other than the persons who claim to have answered them.

Ms. Shim-Larkin?

MS. SHIM-LARKIN:  Yes.

THE COURT:  Did you hear my question?

MS. SHIM-LARKIN:  We are talking about the

```
 1                          PROCEEDINGS                    29
 2   interrogatories dated July 25?
 3              THE COURT:  Correct.
 4              MS. SHIM-LARKIN:  Yes.  I think I asked for
 5   specific parts of Ms. Vargas' interaction, and I don't
 6   think I received the information about those employees
 7   because for answers -- I don't think that Ms. Vargas -- I
 8   don't think defendant is going to admit what Ms. Vargas
 9   says is correct.  I expect that they are going to say that
10   it's not correct.  So if Ms. Vargas says that that's what
11   she says, that's what she complains, and then
12   (indiscernible) which is very different.  So I want to
13   interview those people who interacted with Ms. Vargas so
14   maybe they remember certain things that was not in the
15   complaint report.
16              THE COURT:  I was asking something different.
17   You complain about the verification for interrogatories.
18   And you make citation to the rule that indicates that a
19   person who's answering an interrogatory has to sign it.
20   And if the persons who answered the interrogatories are
21   the ones who provided the verifications, why are you of
22   the view that other people who did not answer --
23              MS. SHIM-LARKIN:  Well, I think --
24              THE COURT:  -- the interrogatories should be
25   signing them or submitted verifications?
```

```
 1                         PROCEEDINGS                    30
```

```
 2              MS. SHIM-LARKIN:  Yeah, I think the answer,
```

```
 3    interrogatory answer, has to be signed by someone and
```

```
 4    someone who's at least reasonable and someone --
```

```
 5              THE COURT:  What does that mean?
```

```
 6              MS. SHIM-LARKIN:  -- that -- employee --
```

```
 7    employee.  That's why -- because the verification even to
```

```
 8    me was Parks Department Commissioner.  But some employees
```

```
 9    are not Parks Department Commissioner.  I mean, some of
```

```
10    the employees are not from Parks Department.  So I don't
```

```
11    understand how Parks Commissioner is reasonable person who
```

```
12    can sign the interrogatory answers.
```

```
13              THE COURT:  If that is the person who answered
```

```
14    the interrogatory, then that is the person who has to sign
```

```
15    it.  The --
```

```
16              MS. SHIM-LARKIN:  Well, he has to --
```

```
17              THE COURT:  -- defendant is -- the defendant --
```

```
18              MS. SHIM-LARKIN:  -- take the --
```

```
19              THE COURT:  -- is an inanimate object.  It's a
```

```
20    government entity, and they have one or more of its
```

```
21    employees assigned to answer interrogatories on its behalf
```

```
22    and sign it.  Because you would like other people to sign
```

```
23    doesn't place an onus on the defendant to have other
```

```
24    people sign the answers.  The person who have answered are
```

```
25    required to do that and no one else.  It may be that
```

1
2   through additional employment of other discovery tools

3   you'll find out why certain persons signed the

4   interrogatories as opposed to others who you think might

5   be the best candidate to sign an interrogatory, but that

6   remains to be seen.

7          Also, you were commenting on this -- I'll get to

8   it now -- and that is the response for identifying

9   information for the 911/311 operators, the enforcement,

10  Parks enforcement personnel, and official you identify as

11  a "pregnant person."  And you take umbrage at the failure

12  to get that information.  Given that Ms. Shim-Larkin

13  contends that the interrogatories were not responded to

14  timely, a matter, as I said earlier in the conference, has

15  already been addressed and been the subject of an order by

16  the Court, why if there are objections being lodged, why

17  are they being lodged when responses to the

18  interrogatories are not timely?

19         MS. SAINT-FORT:  First, if I may, your Honor,

20  the responses to these objections were in fact timely.

21  The prior person, corporation counsel, who was working on

22  this case entered into an agreement with plaintiff, as

23  memorialized in an email, that she would allow us to

24  respond to those -- to the interrogatories -- this

25  interrogatory dated July 25, 2017, in addition to an

1                              PROCEEDINGS                        32

2   August 4, I believe, 2017, interrogatory on September 22,

3   2017, which is when defendant responded to her

4   interrogatories.  So we would disagree that the response

5   to the interrogatory was untimely or that our objections

6   were waived.

7            Furthermore, we've provided plaintiff with the

8   identifying information for individuals listed in her

9   interrogatory, including Martin Kravitz, Eric Love, Miguel

10  Morales, as well as Jennifer Navarro.  In terms of the two

11  Parks Enforcement patrol officers who arrive at Tompkins

12  Square Mini Pool in response to the complaint that she's

13  stating is the complaint by Mrs. Vargas, on the complaint

14  form it indicates that the Department of Parks and

15  Recreation did not dispatch any additional persons to the

16  scene.  And the only officer that we have a record of who

17  was present at that time is Eric Love, who is an

18  individual that she named and information that we provided

19  to her.  And --

20            MS. SHIM-LARKIN:  Your Honor, I --

21            MS. SAINT-FORT:  -- (indiscernible)

22            THE COURT:  Ms. Shim-Larkin, just a moment.

23            MS. SAINT-FORT:  Thank you.

24            With regard to the 911 operator and the 311

25  operator, we don't have the information or don't

1
2  understand -- excuse me.  As to the 911 operator and the

3  311 operator, our response to that is it's irrelevant who

4  the operator was, as Ms. Shim-Larkin had the actual

5  complaint that was generated from that call.

6  Additionally, the description of a female employee who was

7  visibly pregnant on July 21, 2015, is -- and she states is

8  a director or a commissioner, that information hasn't been

9  able -- we haven't been able to discern who that person is

10 based on that vague description.  So there is no

11 identifying information that we can provide to plaintiff

12 because we haven't been able to determine who that person

13 is based on her description.

14       MS. SHIM-LARKIN:  Your Honor, I want to make it

15 clear that defendant did not write two Park Enforcement

16 patrol officers are at Tompkins Square Mini Pool it does

17 not exist, she -- I mean, the defendant did not state it

18 in a written form.  So unless they have to write in a

19 written form and somebody has to sign it and confirm that

20 there was no two Parks Enforcement patrol officers who are

21 at Tompkins Square Mini Pool, but they did not -- they did

22 not do that.  Also, I told them at the police department

23 that they should talk to them.

24       So I think if they couldn't find them, that they

25 have to provide for details as stated and they make some

PROCEEDINGS                    34

reasonable steps if they have -- took the reasonable steps

and what was those reasonable steps.  And I think it's

same for 911 operator or 311 operator; I think they have

to set forth the details as stated and what efforts was

taken by defendant to locate those individuals.  And if

they couldn't find them after reasonable steps, then it

has to be in a detailed affidavit.

        And then Ms. Vargas Martin Kravitz introduced

Ms. Vargas to that female employee who was visibly

pregnant, so I think at least they have to ask Martin

Kravitz.  And if Martin Kravitz does not remember, then

they have to write and sign it.

        THE COURT:  On the issue of the 311 operator, I

don't know why the defendant's position is that that

person's identity is irrelevant, given that Ms. Shim-

Larkin has challenged the accuracy of the complaint

recorded in the 311 complaint form, given the statements

made by Ms. Vargas about what her complaint is or was --

excuse me -- in some detail in an affidavit.  So to the

extent that there is a conflict about what was reported

and what was recorded by the 311 operator, it is relevant.

        With respect to the inability to identify the

person who is said to have been the pregnant parks

official or that no enforcement personnel were dispatched

1

2    to the park -- pool -- excuse me -- it may be that no one

3    was dispatched, but that doesn't mean that someone wasn't

4    on the scene.  But, in any event, I think that it would be

5    appropriate, as Ms. Shim-Larkin is suggesting, to have a

6    supplemental response that indicates, as you indicated to

7    me moments ago, that the investigation by the defendant

8    has not yielded the identity of the pregnant park official

9    and that no enforcement personnel from the defendant's

10   vantage point were present at the pool on the 25th of July

11   or whatever the operative date is so that that is clear.

12   And Ms. Shim-Larkin can challenge that at trial or in

13   motion practice or whatever she wants to do with that

14   information.

15          Similarly, Ms. Shim-Larkin, if you believe that

16   Mr. Kravitz has information that would identify the

17   pregnant park personnel or confirm for you that there were

18   enforcement personnel on the scene, nothing prevents you

19   from submitting through discovery a demand on Mr. Kravitz

20   to confirm that information or provide the identity, if he

21   knows it.  So you're free to do that, if you wish.

22          The last thing I want to raise with respect --

23          MS. SAINT-FORT:  Your Honor -- I'm sorry -- if I

24   may, on the interrogatory that we were just discussing?

25          THE COURT:  Yes.

```
 1                         PROCEEDINGS                    36

 2            MS. SAINT-FORT:  Defendant had an objection

 3   based on relevance, as well, to the 911 operator.  Is it

 4   your position that that has to be provided, as well?

 5            THE COURT:  I was not altogether certain whether

 6   there is an independent 911 call that's made on or about

 7   July 25.

 8            MS. SAINT-FORT:  Well, as I understand it, what

 9   happens is a person may call 911 to report a certain issue

10   that the 911 operator may then find is more appropriate

11   for 311, a 311 issue, and transfer them that way.  There's

12   no indication that a 911 call exists with regard to the

13   issue that plaintiff is complaining about in this

14   interrogatory.

15            MS. SHIM-LARKIN:  Your Honor --

16            THE COURT:  Then in the supplemental response I

17   think that that should be made known so that puts that

18   matter to bed and it doesn't remain an issue for debate

19   and dispute going forward.

20            MS. SAINT-FORT:  Okay.

21            THE COURT:  Just one moment.  I'm checking my

22   notes again.

23            Oh, on the issue of the writing sent by your

24   predecessor to Ms. Shim-Larkin, she contends that that

25   writing is vague and that it does not specifically speak
```

```
 1                       PROCEEDINGS              37
 2  to the issue of objections and whether Ms. Shim-Larkin is
 3  not going to be contesting objections notwithstanding her
 4  desire to receive, albeit late, responses to her discovery
 5  demands.  And she contends that the drafter of a document,
 6  if it is ambiguous, has to suffer the consequences of an
 7  ambiguous document.  And her position is that she did not,
 8  in saying a response could come late, address at all the
 9  issue of objections.  What is the defendant's position on
10  that?
11            MS. SAINT-FORT:  If plaintiff agrees that
12  defendant can respond to an interrogatory at a certain
13  date, that response includes what would be plaintiff's
14  objections or responsive documents or other statements
15  that would be included in a full response to her
16  interrogatory.  Without specifying that information to
17  either Mr. Silverman orally or in writing, there was no
18  indication on defendant's part that we would not be able
19  to lodge our objections.  Absent that information, our
20  responses, including the objections, were timely.
21            MS. SHIM-LARKIN:  Except that he did not state
22  that included objection.  So I think what she said is
23  completely baseless.  There's no law about that.
24            MS. SAINT-FORT:  Our position is that if we are
25  to respond to an interrogatory the full response as we
```

PROCEEDINGS                    38

would give it were it timely, within 30 days based on the

date that it was served or at a date which the parties

agree that the responses would be made includes the

responsive information, which may include objections if

there are any appropriate objections to that

interrogatory.

          MS. SHIM-LARKIN:  Your Honor, the --

          MS. SAINT-FORT:  I don't see any basis for a

part being out when objections can be lodged versus when

only a response can be lodged when a response includes

objections where appropriate.

          MS. SHIM-LARKIN:  Your Honor, Scott Silverman,

when we talked -- when I talked with Scott Silverman, he

did not say anything about objections.  And if he asked

about objections, then I probably wouldn't agree.

          MS. SAINT-FORT:  Right.  But what we can see

from plaintiff's response is that plaintiff did not say

anything about not accepting objections.  What she allowed

was a response.

          MS. SHIM-LARKIN:  No, the --

          MS. SAINT-FORT:  And the response includes an

objection.

          MS. SHIM-LARKIN:  -- except that is the one who

is making exception to the law, then of course the burden

```
 1                        PROCEEDINGS                    39
 2  is on defendant.  The law says it has to be answered
 3  within 30 days; otherwise, all objections are waived.  And
 4  defendant is trying to make an exception.  And burden is
 5  on defendant.  And I don't have to say anything.
 6            MS. SAINT-FORT:  Well, that's not necessarily
 7  the case that if your response or objection is not made
 8  within 30 days that they're automatically waived; that's a
 9  discretionary determination that a judge can make.  So
10  it's not within the federal rule contemplating that
11  automatically once a response is made untimely, that your
12  objections are certainly waived.  So --
13            MS. SHIM-LARKIN:  No, that's what it says on
14  the -- it says in the law that if interrogatory is not
15  answered within 30 days, then it is waived.  And then
16  besides, the email was written by Scott Silverman, and
17  then if they said it has to be interpreted in the
18  (indiscernible) of the drafting party.
19            THE COURT:  When you confirmed your
20  understanding that the response could come in September,
21  you did not indicate anything about opposing the assertion
22  of objections in the response.  But now you seem to want
23  to communicate that the response should be a limited
24  response and that's all that you expected.  I don't
25  understand why you take that position, having confirmed
```

your agreement that the response, whatever the response

would be, could come in September, Ms. Shim-Larkin.

          Did you hear me, Ms. Shim-Larkin?

          MS. SHIM-LARKIN:  Yes.

          THE COURT:  What is the answer to my question?

          MS. SHIM-LARKIN:  Oh, I said he just -- he just

want me to wait for the answers, so I said okay, I can

wait for the answers.  So I didn't expect that they're

going to object.  I had no clue about objection, and he --

          THE COURT:  Why is that the case given that the

defendant had been objecting throughout the process to

discovery demands that you'd been making?

          MS. SHIM-LARKIN:  So I think at the point I made

the motion about the first set of interrogatories, that in

the motion I said if it's not answered within 30 days,

then it's waived.  So I thought because he had received

that letter motions, I thought he was aware of the rule

that interrogatory objections are waived within 30 days.

So I thought he already understood that.  So I thought

that's why he didn't talk about objection.

          THE COURT:  All right, well, I think that the

parties' agreement was to receive the response from the

defendant, whatever the response was, in September and not

that the response would be a limited response, that is, a

```
 1                           PROCEEDINGS                    41
```

 2   response without the assertion of any objection.  So I

 3   think, based upon the agreement of the parties, that the

 4   responses came timely.

 5           Let me turn to the last matter, which is the

 6   deposition controversy, the amount of time.

 7           MS. SHIM-LARKIN:  Your Honor, I have an attorney

 8   for depositions.  I'm not really comfortable talking about

 9   deposition by myself.

10           THE COURT:  All right.  That's fine.  I'll --

11           MS. SHIM-LARKIN:  But I want to say that this is

12   wholly inappropriate, and I think that it has to be

13   finished because --

14           THE COURT:  Just a moment.

15           MS. SHIM-LARKIN:  -- because --

16           THE COURT:  Just a moment.  What is

17   inappropriate?

18           MS. SHIM-LARKIN:  Because defendant did meet and

19   confer to a deposition, and they --

20           THE COURT:  Just a moment.  Just a moment.  Just

21   a moment.  Ms. Shim-Larkin, you just told me that --

22           MS. SHIM-LARKIN:  -- know that --

23           THE COURT:  Ms. Shim-Larkin -- Ms. Shim-Larkin,

24   you just told me you don't want to talk about the

25   deposition.

```
 1                        PROCEEDINGS                    42

 2            MS. SHIM-LARKIN:  Yes.

 3            THE COURT:  And so let's not do that.  We'll

 4   have your counsel address that.

 5            Okay.

 6            MS. SHIM-LARKIN:  Okay.

 7            THE COURT:  All right, those are the matters I

 8   wanted to raise with you this afternoon.  Thank you very

 9   much.  Good day.

10            MS. SAINT-FORT:  Thank you, your Honor.

11            (Whereupon, the matter is adjourned.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

43

# C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing
transcript of proceedings in the case of Shim-Larkin v.
City of New York, Docket #1:16-cv-06099-AJN-KNF, was
prepared using digital transcription software and is a true
and accurate record of the proceedings.


Signature_____
                    *Carole Ludwig*

                    Carole Ludwig

Date:     November 28, 2017