UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

HEENA SHIM-LARKIN,                                    :
                                                      :
                    Plaintiff,                        :
                                                      :
        -against-                              .      :
                                                      :
CITY OF NEW YORK,                                     :
                                                      :
                                                      :
                    Defendant.                        :
------------------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/5/19

**MEMORANDUM and ORDER**

16-CV-6099 (AJN)(KNF)

## INTRODUCTION

Plaintiff Heena Shim-Larkin ("Shim-Larkin"), proceeding pro se, has made a motion for an order: (1) striking "Dominique Saint-Fort's [("Saint-Fort")] perjurious declaration dated August 3, 2018 . . . pursuant to FRCP 26(g), FRCP 37(b)(2)(A)(ii), and Court's inherent power"; (2) requiring that "Lieutenant [Bekim] Kalicovic [("Lt. Kalicovic") be deposed] at Defendant's expense pursuant to FRCP 26(g), FRCP 37(b)(2)(c), 28 U.S.C. § 1927, and Court's inherent power"; (3) directing "the fact that '[b]ecause of [the water hose incident on August 19, 2015,] Ms. Shim-Larkin experienced another anxiety attack' . . . be taken as established for the purpose of this action pursuant to FRCP 26(g), FRCP 37(b)(2)(A)(i), and Court's inherent power"; (4) compelling "Defendant to provide [a copy of] all roll call(s), command log(s), and schedule(s) of the 13th police precinct for the date of August 19, 2015, . . . at least three days before the deposition of [Lt.] Kalicovic, and original at the deposition of [Lt.] Kalicovic, pursuant to FRCP 26(g), and Court's inherent power"; (5) requiring "Defendant to pay Plaintiff costs and expenses incurred in relation to this motion including copying, printing and transportation pursuant to FRCP 26(g)(3), FRCP 37(b)(2)(c), 28 U.S.C. § 1927, and the Court's inherent power"; and (6) imposing "other sanctions against Defendant and its counsels which court deems just and proper pursuant to FRCP 26(g), FRCP 37(b)(2)(A), 28 U.S.C. § 1927, and the Court's inherent power." The defendant opposes the motion.

## BACKGROUND

This action was brought pursuant to Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990 and New York state and city anti-discrimination laws and arises out of Shim-Larkin's employment by the defendant, as a seasonal lifeguard at the Thompkins Square mini pool, during the summer of 2015. Shim-Larkin contends that, in addition to the discriminatory treatment she suffered while employed by the defendant, she was assaulted by a co-worker who, using a hose, sprayed water on her. Shim-Larkin reported the assault to the defendant's police department. Shim-Larkin recalls that, as she was lodging her complaint at the police precinct, she experienced an anxiety attack, which was witnessed by a law enforcement officer who was acting in a supervisory capacity with respect to a police administrative aide ("PAA") with whom Shim-Larkin was interacting. Shim-Larkin sought, through an interrogatory served on the defendant on April 25, 2017, to ascertain the identity of that supervising officer. Shim-Larkin maintains that the defendant frustrated her ability to secure the identity information by, inter alia, failing to: 1) respond timely and completely to her interrogatory; 2) undertake a timely and thorough search to identify the officer; and 3) solicit from her additional information, if such were needed, to identify the officer.

Shim-Larkin filed a cross-motion for sanctions in July 2018. The defendant opposed that motion by, among other things, filing an August 3, 2018 declaration prepared by Saint-Fort, its counsel. Upon reviewing that declaration, Shim-Larkin discovered that "new information concerning [the above-referenced interrogatory] regarding [the supervising officer]" was disclosed. Thereafter, on August 6, 2018, Shim-Larkin wrote to Saint-Fort requesting that the defendant provide her "[a]ll roll call(s), command log(s), and schedule(s) concerning the 13th police precinct concerning August 19, 2015 from 5:30 p.m. through 8 pm [sic]." Shim-Larkin and Saint Fort spoke via telephone on August 8, 2018. Saint-Fort recalls that, during that conversation, Shim-Larkin revealed to her, "for the first time," that the PAA's supervisor could be a captain or higher ranking officer. Based on Saint-Fort's August 3, 2018 declaration, Shim-Larkin concluded that the "[d]efendant failed to take [sic] reasonable inquiry into the

identify [sic] of the individual whom Plaintiff described [as the supervising officer] and additional discovery is needed." As a consequence, Shim-Larkin seeks relief through the instant motion.

## THE MOTION

### PLAINTIFF'S CONTENTIONS

Defense Counsel's Perjurious Declaration

Shim-Larkin asserts that Saint-Fort's August 3, 2018 declaration indicates that on November 21, 2017, the defendant "requested the roll call for the Thirteenth Precinct [for] August 15, 2015, between 5:30 p.m. and 8:00 p.m." and received same in December 2017. However, August 15, 2015, is not the date on which Shim-Larkin visited the 13th police precinct. Shim-Larkin contends that when she "accused Defendant for requesting the roll call for the wrong date," August 15, 2015, instead of August 19, 2015, Saint-Fort wrote, in an August 24, 2018 letter, that paragraphs 15 and 17 of her declaration recorded the August 15, 2015 date "mistakenly" and that the defendant had in fact requested and received the August 19, 2015 roll call data germane to the hours 5:30 p.m. through 8:00 p.m. Shim-Larkin concludes that Saint-Fort's admission, in her August 24, 2018 letter, that August 15, 2015, was "mistakenly" recited in paragraphs of her August 3, 2018 declaration demonstrates that Saint-Fort "committed perjury" via her declaration.

Shim-Larkin contends that Saint-Fort asserted in her August 3, 2018 declaration, that the only male lieutenant at the 13th precinct on August 19, 2015, was "a Special Operations Officer who wears plain clothes," and that this is a perjurious statement. According to Shim-Larkin, this is so because the New York City police department's Patrol Guide ("Patrol Guide") "indicates that Special Operations Lieutenant should wear uniform as much as possible, except when it is not practical to wear uniform." Furthermore, in light of the information in the Patrol Guide about the attire of Special Operations lieutenants, Shim-Larkin maintains that if the defendant "ruled out [the] Special Operations Lieutenant" as the PAA's supervisor – whose identity Shim-Larkin has been seeking – because the lieutenant the

defendant focused on was wearing plain clothes, then "a reasonable person will conclude that [the August 3, 2018 declaration] misled the courts and Plaintiff into believing that Special Operations Lieutenant wears plain clothes all the time."

Shim-Larkin contends that in Saint-Fort's August 3, 2018 declaration counsel stated that "[n]o [police] Captain was assigned to the Thirteenth [police] precinct between 5:30 p.m. and 8:00 p.m." on August 19, 2015. Shim-Larkin maintains that the portion of the precinct's Command Log, for August 19, 2015, that the defendant disclosed to her reflects an entry at 7:08 p.m. "with [a] captain's signature," and that Saint-Fort acknowledged, in her August 24, 2018 letter, that the Command Log "listed the name of the only captain present at the Thirteenth Precinct on August 19, 2015 between 5:30 p.m. and 8:00 p.m." Therefore, according to Shim-Larkin, "Saint-Fort committed perjury by declaring that '[no] Captain was assigned to the Thirteenth Precinct between 5:30 p.m. and 8:00 p.m.,' which was not correct and true." To address the instances of perjury alleged above, Shim-Larkin urges the Court to strike Saint-Fort's August 3, 2018 declaration from the record, as a sanction, pursuant to the Court's inherent power and Fed. R. Civ. P. 37(b)(2)(A)(ii), to prevent its receipt into evidence during proceedings associated with this action.

Rule 26(g) Violation

Shim-Larkin contends that, since the time she served the defendant with her first set of interrogatories, on April 25, 2017, she has been trying to learn from the defendant the identity of the law enforcement officer who was supervising the PAA with whom Shim-Larkin interacted on August 19, 2015, at the 13th police precinct. Shim-Larkin recalls that on October 16, 2017, during a telephone conversation with Saint-Fort, she reported that the PAA's supervisor could be a lieutenant or higher ranking officer because he wore a white shirt. Shim-Larkin made this assertion about the PAA's supervisor in filings she made with the court in January and July 2018. Shim-Larkin contends that "nearly a year after" the August 25, 2017 deadline fixed by the Court for the defendant to respond to the

plaintiff's April 2017 first set of interrogatories, Saint-Fort filed her August 3, 2018 declaration which supplied new information "concerning Defendant's efforts to identify the [PAA's supervisor whom] Plaintiff's Interrogatory No. 1 sought [to identify], and [reported] the result of the investigation" the defendant undertook to identify that person.

Shim-Larkin maintains that the defendant's tardiness in responding to interrogatory no. 1 of her first set of interrogatories – almost one year after the Court directed it to respond – is not explained, as the defendant claims, by the alleged vagueness of the information Shim-Larkin provided about the PAA's supervisor because: 1) the defendant never "informed Plaintiff that it needs more information to start a search [into the identity of the supervisor] until [the occurrence of the] October 16, 2017 phone call" Shim-Larkin had with Saint-Fort; 2) Saint-Fort's declaration indicates that the defendant waited until November 21, 2017, over 30 days after the October 16, 2017 telephone conversation Shim-Larkin had with Saint-Fort, to request the 13th police precinct roll call to investigate the supervisor's identity; 3) the defendant's vagueness objection to the relevant interrogatory was determined by the Court in August 2017 to have been waived; and 4) the defendant never requested from the Court an extension of time to respond to the interrogatory: "Defendant . . . simply ignore[d] the deadline set by the court order." According to Shim-Larkin, these factors demonstrate that the reasonable inquiry obligation imposed by Rule 26(g) of the Federal Rules of Civil Procedure was not met and a sanction must be imposed pursuant to Fed. R. Civ. P. 27(g)(3).

Deposition of Lt. Kalicovic

Shim-Larkin contends that, based upon her review of the portion of the 13th precinct's August 19, 2015 Command Log the defendant disclosed to her, Lt. Kalicovic, the Special Operations lieutenant, "was on duty when Plaintiff visited the 13th precinct on August 19, 2015 and his name appears in [the] NARRATIVE section of NYPD [New York Police Department] complaint report" that was generated based on Shim-Larkin's visit to the precinct. According to Shim-Larkin, "she requested Defendant to

-5-

verify whether" Lt. Kalicovic is the PAA's supervisor whose identity Shim-Larkin attempted to learn via her first set of interrogatories. Shim-Larkin contends that no verification was provided by the defendant because it determined that Lt. Kalicovic wore plain clothes on August 19, 2015, not a police department uniform. Shim-Larkin maintains that "[s]ince Defendant refused to verify whether Lt. Kalicovic was the person [the plaintiff's] Interrogatory No. 1 sought or not, Plaintiff needs to do it herself," through a deposition of the lieutenant, the cost of which the Court should make the defendant bear. According to Shim-Larkin, in an unrelated case, Lt. Kalicovic testified at a deposition that he served as "a desk officer and he is familiar with Command Log entries." Shim-Larkin has indicated that, at the lieutenant's deposition she will explore with him the 13th precinct's "roll call(s), command log(s), and schedule(s)"; therefore, the Court should direct the defendant to provide a copy of those documents to her three days prior to the lieutenant's deposition and require the defendant to produce the original documents for her inspection at the deposition. According to Shim-Larkin, producing the original Command Log at the deposition is vital because "the handwriting in the [copy of the] command log she received is hard to read and there are many codes [in the Command Log,] which Plaintiff does not know what they mean."

Directing Fact is Established

Shim-Larkin contends that the "Defendant attempted to avoid its discovery obligation of providing [the identity of the PAA's supervisor] through perjurious Saint-Fort Decl[aration]." According to Shim-Larkin, an intentional or grossly negligent act that hinders discovery supports an inference that the information whose revelation was hindered was harmful to the hindering party. Shim-Larkin maintains that, in the circumstance of this case, "[a] reasonable person will be able to infer from the fact that Saint-Fort committed perjury, that the identity of [the PAA's] supervisor is both relevant and harmful to Defendant." As a consequence for the defendant's hindering her discovery efforts to learn the identity of the PAA's supervisor, Shim-Larkin requests that the Court deem "established for [the] purpose of this action" her allegation, that she experienced an anxiety attack, at the 13th precinct, which

was observed by the PAA's supervisor, and that it was brought on by "the water hose incident [to which she alleges her co-worker subjected her,] on August 19, 2015."

## DEFENDANT'S CONTENTIONS

According to the defendant, Shim-Larkin's "motion for sanctions must be denied because neither her assertion that Saint-Fort's August 3, 2018 declaration "included perjured statements [– which] is incorrect" – nor her failure to receive "discovery from requests made following the close of discovery" is "sanctionable conduct." In support of its position, the defendant submitted a memorandum of law and a declaration by Saint-Fort. Attached to the declaration are: "Exhibit A," an August 6, 2018 letter by Shim-Larkin to Saint-Fort requesting "[a]ll roll call(s), command log(s) and schedule(s) concerning the 13th police precinct concerning August 19, 2015, from 5:30 pm through 8 pm [sic]", and complaining that on November 21, 2017, "Defendant requested a roll call for the wrong date," August 15, 2015, instead of August 19, 2015; "Exhibit B", an August 23, 2018 letter by Saint-Fort to Shim-Larkin "to follow-up on" Shim-Larkin's August 6, 2018 letter and an August 8, 2018 telephone conversation Shim-Larkin had with Saint-Fort; "Exhibit C", email messages exchanged by Shim-Larkin and Saint-Fort on August 23 and 24, 2018; and "Exhibit D," a September 12, 2018 declaration by Captain Bekim Kalicovic in which he states he performed his duties on August 19, 2015, in plain clothes.[1]

The defendant contends that Shim-Larkin provided "general and vague" descriptive information about the person she maintains was supervising the PAA on August 19, 2015. In her "First Set of Interrogatories," Shim-Larkin indicated that the supervisor was "[p]ossibly a sergeant, Caucasian male." According to the defendant, on October 16, 2017, during a telephone conversation with Saint-Fort, Shim-Larkin "explained for the first time," that the PAA's supervisor, whose identity Shim-Larkin sought was "wearing a white shirt on August 19, 2015 . . . and thus was likely was a Lieutenant." Based on "this

---

[1]Lt. Kalicovic was, according to Exhibit D to Saint-Fort's declaration, promoted to captain on August 31, 2018. To ensure clarity and for consistency, the Court will, in this writing, refer to him as a lieutenant.

clarifying information as to the potential identity of [the] supervisor," the defendant requested "the August 19, 2015 schedule for the Thirteenth Precinct," to commence "an investigation to discern the [supervisor's] identity." "In further efforts to identify [the] supervisor, on November 21, 2017, Defendant requested the roll call for the Thirteenth Precinct on August 19, 2015, between 5:30 p.m. and 8:00 p.m." According to Saint-Fort, the defendant received the requested roll call in December 2017 and, sometime thereafter, "Defendant spoke with . . . Police Officers, Lieutenants, Sergeants and Police Administrative Assistants [including the PAA with whom Shim-Larkin interacted on August 19, 2015] at the Thirteenth Precinct to locate the person obliquely described by Plaintiff." "In February or March 2018 Defendant completed [that] investigation."

The defendant maintains that "[d]uring [an] August 8, 2018 conversation" that Saint-Fort had with Shim-Larkin "Plaintiff stated for the first time that the individual she seeks to identify [, the PAA's supervisor,] could have been a Captain or a higher ranking individual" and, as a consequence, Shim-Larkin stated that the person would not be identified on the precinct's roll call but would be identified in the precinct's Command Log. According to Saint-Fort, the defendant received the command log "[o]n or about August 22, 2018," and Saint-Fort shared a redacted version of it with Shim-Larkin through a letter dated August 23, 2018. The defendant contends that on August 24, 2018, Shim-Larkin sent an email message to Saint-Fort in which Shim-Larkin stated that the PAA's supervisor whose identity she had been seeking "was Lieutenant Kalicovic, requested that Defendant verify whether he is the person she was seeking, and stated that if Defendant could not make such a verification she would seek sanctions in the form of deposing [Lt.] Kalicovic at Defendant's expense."

In essence, the defendant maintains that the descriptive information provided by Shim-Larkin regarding the PAA's supervisor evolved over time: on April 25, 2017, a Caucasian male, possibly a sergeant, on October 16, 2017, a white-shirted officer, likely a lieutenant, on August 8, 2018, "over six months after discovery closed," a captain or higher ranking individual, and culminating on August 24,

2018, with an assertion by Shim-Larkin that the PAA's supervisor "was in fact Lieutenant Kalicovic." The defendant asserts that no sanctions are warranted in a circumstance such as this where: (1) an investigation is delayed not because of bad faith on the part of the defendant or any interest by the defendant or its counsel in multiplying the proceedings but rather is a consequence of the general and vague descriptive information provided by Shim-Larkin respecting the individual she believed was supervising a PAA on August 19, 2015, at the 13th precinct; and (2) Shim-Larkin has failed "to cite any case law interpreting the timeframe [sic] which is considered 'reasonable' in completing an investigation into a request to identify a person who is vaguely described."

The defendant contends that Shim-Larkin's assertions of perjury by Saint-Fort are baseless. According to the defendant, Saint-Fort's acknowledgment that her August 3, 2018 declaration contained a typographical error respecting the date for which roll call information from the 13th precinct was sought that appears in paragraphs 15, 17, and 30 of that declaration, is not evidence of perjury, for although the incorrect date is recited in the three paragraphs noted above, the correct date, August 19, 2015, is recited at paragraph 27 of the same declaration. The defendant maintains that the mere repetition of the incorrect date, August 15, 2015, supports its assertion that a typographical error was made especially in light of the recitation of the correct date, August 19, 2015, in the same declaration. Consequently, the defendant contends that no sanction is warranted.

In like manner, the defendant asserts that the allegation of perjury made by Shim-Larkin respecting Saint-Fort's statement that no captain was assigned to the 13th precinct between 5:30 p.m. and 8:00 p.m. on August 19, 2015, cannot survive close scrutiny. This is so because, according to the defendant, although a captain made an entry in the precinct's Command Log, it does not establish that the captain was assigned to the precinct, as Shim-Larkin asserts. Rather, the defendant maintains that it just confirms that the captain was present in the precinct on that day. Therefore, no sanction is appropriate, as the defendant did not engage in any bad faith conduct.

-9-

The defendant asserts that permitting Shim-Larkin to depose Lt. Kalicovic at the defendant's expense, as a sanction, is "nonsensical." The defendant contends that this is so because the "plaintiff was aware of [Lt. Kalicovic's] name approximately ten months before the close of discovery but never noticed his deposition or made discovery requests specific to him." In addition, according to the defendant, a deposition of Lt. Kalicovic would be "unnecessary given [Lt.] Kalicovic's declaration dated September 12, 2018, attesting that he was in plain clothes on August 19, 2015." The defendant maintains that "[s]anctions are wholly inappropriate in this case" because the "Defendant has done nothing to multiply this proceeding in any manner and has not engaged in any bad faith." Therefore, "the threshold requirement for sanctions under 28 U.S.C. § 1927" has not been met.

## PLAINTIFF'S REPLY

Shim-Larkin maintains that the defendant "did not directly oppose sanctions [she requested] based on FRCP 26(g), FRCP 37(b)(2), or the court's inherent power." Shim-Larkin contends that while the defendant: (1) concedes that sanctions are appropriate where a party engages in "bad faith [conduct] or willful misconduct"; and (2) asserts that it "has done nothing to multiply this proceeding . . . [or] engaged in any bad faith" conduct, "sanctions pursuant to FRCP 26(g) or FRCP 37(b)(2) do not require a finding of bad faith." Moreover, the defendant "failed to explain why or how sanctions pursuant to FRCP 26(g), FRCP 37(b)(2), or the court's inherent power are unwarranted," rendering her request for sanctions under Fed. R. Civ. P. 26(g), Fed. R. Civ. P. 37(b)(2), or the court's inherent power unopposed by the defendant. Shim-Larkin also contends that the "Defendant did not directly oppose Plaintiff's request for [a directive that a] certain fact be taken as established for the purpose of this action," and did not "explain why or how such relief is unwarranted." Therefore, according to Shim-Larkin, the request she made that the Court deem a certain fact as established for the purpose of this action is unopposed by the defendant.

-10-

Shim-Larkin contends that the defendant's failure to respond timely to her interrogatory no. 1, in her first set of interrogatories, prevented her from assessing whether to depose Lt. Kalicovic and the fact that his surname appeared in the NYPD complaint report pertinent to this action is meaningless because Shim-Larkin is unaware of why his surname appears in that report.

According to Shim-Larkin, as noted above, Lt. Kalicovic is familiar with Command Log entries because he testified previously, in an unrelated case, that he has served as a desk officer. Shim-Larkin contends that the defendant failed to oppose directly her request to depose Lt. Kalicovic, at the defendant's expense, so that she might understand more fully the entries in the 13th precinct's Command Log. Shim-Larkin maintains that the defendant only opposed having Lt. Kalicovic deposed, at the defendant's expense, for two reasons, because: (1) Shim-Larkin knew the lieutenant's name ten months before the close of discovery; and (2) Lt. Kalicovic asserts, in his declaration, that he wore plain clothes on August 19, 2015. Shim-Larkin contends that the two grounds upon which the defendant opposed her request to depose Lt. Kalicovic, at its expense, relate solely to the issue of whether the individual Shim-Larkin sought to identify as the PAA's supervisor, through interrogatory no. 1 of her first set of interrogatories, is Lt. Kalicovic. In addition, Shim-Larkin asserts that the two grounds relied upon by the defendant in opposing the deposition request have nothing to do with her desire to gather information, through the deposition, concerning what the entries in the Command Log mean. Therefore, Shim-Larkin maintains that, "[s]ince Defendant failed to explain why or how Kalicovic should not be questioned at Defendant's expense regarding practices concerning the Command Log," her request to depose Lt. Kalicovic, at the defendant's expense, is unopposed. Shim-Larkin also maintains that the defendant did not oppose directly her request that, prior to conducting the lieutenant's deposition copies of the 13th precinct's roll calls, Command Logs and schedules be disclosed to her and that the original of those documents be presented to her for inspection at the time of the lieutenant's deposition; therefore, Shim-Larkin contends that those requests are also unopposed by the defendant.

According to Shim-Larkin, the defendant did not oppose directly her "request for award of costs and expenses related to the instant motion." Shim-Larkin notes that an excerpt of the 13th precinct's Command Log was provided to her "only after Plaintiff filed August 10, 2018 letter-motion, [for a pre-motion discovery conference pursuant to Local Civil Rule 37.2 of this court,]" and that Lt. Kalicovic's verification, which Shim-Larkin requested from the defendant on August 24, 2018, via an email message she sent to Saint-Fort, "was provided only after Plaintiff filed instant motion." Shim-Larkin maintains that, in a circumstance where material requested from the defendant is provided only after a motion to compel has been filed, a court must, perforce of Fed. R. Civ. P. 37(a)(5)(A), require the party or the attorney advising the party, or both to pay the movant's reasonable expenses incurred in making the motion. Shim-Larkin asserts that her "request for award of costs and expenses must be granted," pursuant to the provision of Rule 37 indicated above. In addition, she notes that, "since Defendant failed to explain why or how such relief is unwarranted, [her request for the relief] is unopposed."

Shim-Larkin contends that Saint-Fort's assertion that "clarifying information" was provided via Shim-Larkin's explanation, on October 16, 2017, that the PAA's supervisor, who was described in her interrogatory no. 1 as "Possibly a sergeant, Caucasian male" was, instead, "likely a lieutenant," is untenable because "no reasonable person will believe that the change from 'sergeant' to 'lieutenant' made any difference as far as the degree of (purported) vagueness [the defendant alleges with respect to the supervisor's description Shim-Larkin provided and] there is no indication that Defendant made any effort to locate 'a sergeant' before October 16, 2017." Shim-Larkin asserts that, in any event, as of October 16, 2017, her interrogatory no. 1 was no longer vague in the defendant's estimation, as the defendant was able to commence its investigation based on the purportedly "vague" information Shim-Larkin had provided.

With respect to the defendant's assertion that the cases to which Shim-Larkin made citation, "provide no guidance on the length of time that is considered to be reasonable in responding to a vaguely

-12-

worded request," Shim-Larkin maintains that the defendant misapprehends the cited cases which explain that a party's failure to respond timely to a court-imposed discovery deadline, in the absence of a request for an extension of time to respond, is unreasonable and a party that "is unable to respond to discovery requests . . . must clearly state so" to the adversary party. According to Shim-Larkin, in the case at bar, the defendant completed the investigation it commenced in October 2017, into the identity of the PAA's supervisor, "[i]n February or March, 2018," determined that it could not identify the supervisor but did not advise Shim-Larkin of this in "February or March 2018, or even in April 2018."

Shim-Larkin contends that Saint-Fort's August 3, 2018 declaration was misleading, in that she declared under penalty of perjury that "no Captain was assigned to the Thirteenth Precinct between 5:30p.m. and 8:00p.m." on August 19, 2015. However, Saint-Fort omitted from her declaration that a captain visited the precinct on that date. According to Shim-Larkin, Saint-Fort was obligated to provide sufficient information, through her declaration, that would prevent the declaration from being misleading and her failure to do so, as it relates to the presence of a captain at the 13th precinct on August 19, 2015, although a captain was not assigned to that precinct, "evidences bad faith."

Shim-Larkin also contends that the September 12, 2018 declaration submitted by Lt. Kalicovic is misleading, in that the lieutenant "did not identify a specific title [he] held on August 19, 2015 . . . to mislead Plaintiff and the Court to believe that he was assigned to Special Operations Bureau, but not assigned as a Special Operations Lieutenant." This was done, according to Shim-Larkin, to prevent her from determining "what his duties were and which policies were applicable to him"; these two factors, Shim-Larkin asserts, would inform whether Lt. Kalicovic performed duties on August 19, 2015, in a police department uniform.

## DISCUSSION

A court's "authority to impose sanctions is grounded, first and foremost, in [its] inherent power to control the proceedings that take place before [the court]." Ransmeir v. Mariani, 718 F.3d 64, 68 (2d

-13-

Cir. 2013). A court's inherent powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-31, 82 S. Ct. 1386, 1389 (1962). Owing to the very potency of a court's inherent powers, they must be exercised "with restraint and discretion." Chambers v. NASCO Inc., 501 U.S. 32, 44, 111 S. Ct. 2123, 2132 (1991). Therefore, "a particularized showing of bad faith [is needed] to justify use of the court's inherent power." U.S. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991).

Rule 26(g) of the Federal Rules of Civil Procedure obligates an attorney to sign "every discovery request, response, or objection." Fed R. Civ. P. 26(g)(1). By doing so, the attorney "certifies that to the best of the person's knowledge, information and belief formed after a reasonable inquiry . . . [the] request, response or objection, . . . is . . . not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)(1)(B)(ii). The obligation the Rule places on an attorney to make a reasonable inquiry "is satisfied if the [attorney's investigation] and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard . . . . In making the inquiry, the attorney may rely on assertions by the client . . . as long as the reliance is appropriate under the circumstances . Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances." Fed. R. Civ. P 26(g) Advisory Committee Notes to the 1983 Amendment.

If an attorney's certification violates Rule 26(g), without there being substantial justification for the violation, a court on motion or on its own, "must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." See Kosher Sports, Inc. v. Queens Ballpark Co., LLC, No. 10-CV-2618, 2011 WL 3471508, at *13 (E.D.N.Y. Aug. 5, 2011). The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ.

-14-

P. 26(g)(3). Imposing a sanction pursuant to Rule 26(g) is appropriate if signing the response, request or objection was objectively unreasonable. See Apex Oil v. Belcher Co. of New York, 855 F.2d 1009, 1015 (2d Cir. 1988). "The nature of the sanction [for violating Fed. R. Civ. P. 26(g)] is a matter of judicial discretion to be exercised in light of the particular circumstances." Fed. R. Civ. P. 26(g) Advisory Committee Notes to the 1983 Amendment.

Rule 37(b)(2) of the Federal Rules of Civil Procedure permits a court to sanction a party that "fails to obey an order to provide or permit discovery." "[T]he reason for the failure to comply, and the willfulness or good faith of the party, do not affect the fact of noncompliance and are relevant only to the sanction to be imposed for the failure." *8B Charles Allan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure,* Section 2283, at 431 (3d ed. 2010). Among the sanctions provided for in Fed. R. Civ. P. 37(b)(2) is "directing that . . . designated facts be taken as established for the purpose of the action." Fed. R. Civ. P. 37(b)(2)(A)(i). However, Fed. R. Civ. P. 26(e) provides that a party "who responded to an interrogatory . . . must supplement or correct . . . its response . . . in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "The obligation to update and supplement responses [to discovery demands] continues even after the close of discovery." Allen v. Colgate-Palmolive, No. 79 Civ. 1076, 1985 WL 191, at 1 (S.D.N.Y. Jan. 14, 1985).

Title 28, United States Code, Section 1927, provides that: "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." "Imposition of a sanction under § 1927 requires a 'clear showing of bad faith.'" Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986)(citation omitted). A sanction imposed under section 1927, like a sanction imposed pursuant to the Court's inherent power, "is proper when the attorney's actions are so

-15-

completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Oliveri, 803 F.2d at 1273.

Perjury is a criminal offense. See 18 U.S.C. §§ 1621, 1623. However, "[a] statement can be false without being uttered with the scienter required to render it perjurious." Margo v. Weiss, 213 F.3d 55, 63 (2d Cir. 2000). Scienter, in this context, means the "willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory. Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." U.S. v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001) (citations omitted).

The Court is mindful that "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)(internal quotation marks and citations omitted).

Defense Counsel's Perjurious Declaration

Shim-Larkin alleges that several statements made by Saint-Fort in her August 3, 2018 declaration are perjurious. The Court disagrees. At several points in her August 3, 2018 declaration, Saint-Fort referenced August 15, 2015, as the date on which Shim-Larkin visited the 13th precinct, while also reciting, in that same document, the actual date of Shim-Larkin's visit, August 19, 2015. Each recitation of the incorrect visit date in the declaration, alleged by Shim-Larkin to be an instance of perjury, is indicative, perhaps, of a failure on Saint-Fort's part to proofread the declaration carefully. However, Saint-Fort's proofreading gaffe leading to the recitation of an incorrect date in her declaration cannot be considered perjury, as nothing in the motion record establishes that Saint-Fort acted "with the scienter" required to make the date misstatements perjurious. Margo, 213 F.3d at 63. Saint-Fort's references to the wrong visit date several times in her declaration were likely mistakes because she also recited the correct visit date in that same document. The Court finds that Saint-Fort's references to the wrong visit

-16-

date are "[s]imple inaccuracies or inconsistencies [which] do not rise to the level of perjury." Monteleone, 257 F.3d at 219.

According to Shim-Larkin, the police department's Patrol Guide indicates that a Special Operations lieutenant, such as Lt. Kalicovic, should wear a police department uniform, except where it is not practical to do so. In Lt. Kalicovic's declaration, Exhibit D to Saint-Fort's declaration in opposition to the instant motion, the lieutenant states that he did not wear a uniform on August 19, 2015, while performing his duties at the 13th precinct. Instead, the lieutenant asserts that he was attired in plain clothes. The Court notes that Lt. Kalicovic does not deny wearing a white shirt on that date as part of his plain clothes ensemble, and a white shirt is what Shim-Larkin contends the PAA's supervisor wore on that date. In any event, the motion record is barren of evidence establishing that it was practical for Lt. Kalicovic to have been attired in a police uniform on August 19, 2015, while performing his duties at the 13th police precinct, and practicality is the standard Shim-Larkin maintains is prescribed by the Patrol Guide. The Court finds that perjury cannot be ascribed to Saint-Fort for reporting, through her August 3, 2018 declaration, that Lt. Kalicovic was attired in plain clothes on August 19, 2015, while he performed his duties at the 13th police precinct if that is what her investigation into the matter led Saint-Fort to conclude, a conclusion that has now been corroborated by Lt. Kalicovic through his September 12, 2018 declaration.

Saint-Fort's assertion that no police captain was assigned to the 13th precinct on August 19, 2015, alleged to be perjurious, is not contradicted by any evidence in the motion record. Although the 13th precinct Command Log referenced in the motion record indicates that a captain was present at the 13th precinct on August 19, 2015, being present at the precinct is not the same as being assigned to work at the precinct. Accordingly, Saint-Fort's assertion was not perjurious. For all the reasons noted above, Shim-Larkin's request, that the Court strike from the record Saint-Fort's August 3, 2018 declaration, as a

sanction pursuant to Fed. R. Civ. P. 26(g), 37(b)(2)(A)(ii) or the Court's inherent power, because the declaration contains perjurious statements, is denied.

Rule 26(g) Violation

Shim-Larkin served the defendant with her first set of interrogatories in April 2017. Interrogatory no. 1 of that first set of interrogatories, among other things, asked the defendant to identify the PAA's supervisor. The Court has found previously that the defendant responded to the interrogatory untimely, see Docket Entry No. 119, and incompletely, see Docket Entry No. 319, in August 2017; for example, the defendant's response did not identify the PAA's supervisor. The defendant's August 2017 response to Shim-Larkin's first set of interrogatories was signed by the defendant's former counsel, Scott Silverman ("Silverman"). By signing the defendant's response, Silverman certified, pursuant to Fed. R. Civ. P. 26(g)(1), that he had made a reasonable inquiry, that is, an "investigation . . . reasonable under the circumstances" into the matters addressed by the interrogatories including that portion of interrogatory no. 1 pertaining to the identity of the PAA's supervisor. Fed. R. Civ. P. 26(g) Advisory Committee Notes to the 1983 Amendment.

The motion record establishes that Silverman's certification was made without substantial justification, because he did not make the requisite inquiry into the identity of the PAA's supervisor before signing the defendant's August 2017 response to Shim-Larkin's first set of interrogatories. This is clear because at paragraph 16 of the declaration Saint-Fort submitted in opposition to the instant motion, she states that the defendant did not commence its investigation into the identity of the PAA's supervisor until October 2017, two months after Silverman's certification was made. The first investigatory activity undertaken by the defendant, in October 2017, to ascertain the supervisor's identity, was retrieving the 13th precinct's August 19, 2015 schedule.

According to Saint-Fort, on November 21, 2017, the defendant requested the 13th precinct's August 19, 2015 roll call covering the hours between 5:30 p.m. and 8:00 p.m. in an additional effort to

-18-

identify the PAA's supervisor. The 13th precinct's schedule and roll call are the defendant's own records. As such, it is likely they have been in the defendant's possession, custody and control continuously, and were available for inspection by the defendant at all times during this litigation including in April 2017, when Shim-Larkin served her first set of interrogatories, and in August 2017, when Silverman signed the defendant's response to those interrogatories certifying, pursuant to Fed. R. Civ. P. 26(g)(1), that a reasonable inquiry had been made before responding to the interrogatories.

In or about December 2017, the defendant interviewed 13th precinct police officers, lieutenants and sergeants to locate the PAA's supervisor. Saint-Fort's declaration notes that, at about that same time, the defendant decided to interview the most obvious source of information concerning the identity of the PAA's supervisor, the PAA with whom Shim-Larkin interacted on August 19, 2015.

It was not objectively reasonable for Silverman to sign the defendant's response to Shim-Larkin's first set of interrogatories and thereby certify, in August 2017, that a reasonable inquiry had been made by him into the identity of the PAA's supervisor, when the defendant had not and would not commence its investigation into the supervisor's identity until two months later, in October 2017. By certifying that a reasonable inquiry had been undertaken, when it had not been, Silverman violated Fed. R. Civ. P. 26(g). The motion record is devoid of evidence establishing that substantial justification for Silverman's violation exists. Therefore, the Court finds that he acted in bad faith by making the certification.

When a Fed. R. Civ. P. 26(g) certification violation occurs, without there being substantial justification for the violation, the Court must impose an appropriate sanction on the violator, the violator's client or on both. See Kosher Sports, 2011 WL 3471508, at *7. A sanction for violating Fed. R. Civ. P. 26(g) does not require a finding of bad faith on the part of the violator. As noted above, the analysis performed by a court, under Rule 26(g), is focused on the reasonableness of the violator's conduct under the circumstances. See Fed. R. Civ. P. 26(g) Advisory Committee Notes to 1983

Amendment. However, when a court finds bad faith exists in the particular circumstance before it, the court may, in its discretion, also invoke its inherent power to sanction the bad faith conduct. See Int'l Brotherhood of Teamsters, 948 F.2d at 1345.

The Court has determined that invoking its inherent power to impose a sanction here, is warranted. This is so because: (1) Silverman acted in bad faith, when he made his certification, without having made a reasonable inquiry; and (2) the defendant failed to launch an investigation into the supervisor's identity between April 2017 and October 2017, although it had access to the PAA and likely had in its possession, custody and control, since the commencement of this action, the 13th precinct-related records it used to initiate the investigation into the supervisor's identity but delayed doing so until approximately six months after Shim-Larkin requested that identity information via her first set of interrogatories. The Court rejects, as untenable, the defendant's suggestion that Shim-Larkin's limited description of the PAA's supervisor delayed the commencement of or frustrated the progress of the defendant's investigation. The defendant did not need information from Shim-Larkin, such as the rank of the supervisor, to retrieve its records and review them with the PAA, whose identity is set forth in Shim-Larkin's April 2017 first set of interrogatories, to enable the PAA to attempt to identify for the defendant the law enforcement officer who supervised her on August 19, 2015.

The Court is mindful that a party must supplement or correct "in a timely manner," an interrogatory response that is in some material respect incorrect or incomplete. Fed. R. Civ. P. 26(e)(1)(A). However, the supplementation complained of here, "new information" pertinent to defendant's investigation relevant to interrogatory no. 1 of Shim-Larkin's first set of interrogatories, that Shim-Larkin contends she received via Saint-Fort's August 3, 2018 declaration, and the August 2018 disclosure of excerpts from the 13th precinct's Command Log, was not accomplished in a timely manner. The defendant's investigation concluded in February or March of 2018 but the defendant did not inform Shim-Larkin of that and did not make concomitantly with the conclusion of the investigation, the

-20-

supplemental information, at issue, available to her. The motion record does not establish why Shim-Larkin did not receive in February or March 2018 the supplemental information pertinent to interrogatory no. 1 that was revealed to her via Saint-Fort's August 3, 2018 declaration.

With respect to the excerpts of the 13th precinct's Command Log disclosed to Shim-Larkin, the defendant contends that Shim-Larkin revealed to it only on August 8, 2018, that the PAA's supervisor could have held the rank of captain or higher and, that as a result, that officer's identity would not be found in the precinct's roll call but would be found in the precinct's Command Log. This August 8, 2018 revelation prompted the defendant to seek the 13th precinct's Command Log for August 19, 2015. The defendant's contention that it only learned from Shim-Larkin on August 8, 2018, that the PAA's supervisor could hold the rank of captain or higher is undermined by the record in this case. The record establishes that Shim-Larkin advised the defendant, through a January 9, 2018 reply brief, Docket Entry No. 181, and a July 20, 2018 declaration, Docket Entry No. 340, that the PAA's supervisor could hold the rank of lieutenant or higher including the rank of captain because the supervisor wore a white shirt. Inasmuch as the precinct's Command Log is a document likely within the defendant's possession, custody and control and the defendant is fully aware of the contents of its own log, it is unclear why, if acting in good faith, the defendant delayed from January 2018 to August 2018 to seek, obtain and search the 13th precinct's Command Log to determine whether the PAA's supervisor might have held the rank of captain or higher, as Shim-Larkin had advised it in January 2018.

Deposition of Lt. Kalicovic

Whether Lt. Kalicovic is the person who was supervising the PAA on August 19, 2015, is not certain. The defendant maintains that Shim-Larkin advised it on August 24, 2018, via an email message, that Lt. Kalicovic was the person supervising the PAA on August 19, 2015. The defendant is wrong. Exhibit C to the declaration Saint-Fort submitted in opposition to this motion reveals that Shim-Larkin stated only that she thought "the person whom my Interrogatory No. 1 sought <u>might</u> be Lieutenant

-21-

Kalicovic" and Shim-Larkin asked the defendant to verify whether Lt. Kalicovic is the person who supervised the PAA on August 19, 2015. (Emphasis added). The defendant's delay in providing Shim-Larkin supplemental information responsive to interrogatory no. 1 of her first set of interrogatories timely, violated Fed. R. Civ. P. 26(e), was not justified and hampered her ability to determine whether to depose Lt. Kalicovic before the close of discovery. As Shim-Larkin points out, although the lieutenant's surname appeared in the police report that was prepared based upon her visit to the 13[th] police precinct on August 19, 2015, she did not know why his name appeared in the "NARRATIVE" section of that report. Shim-Larkin also did not know and alleges she still does not know whether he is the person who supervised the PAA.

Permitting Shim-Larkin to depose Lt. Kalicovic "to verify if Lt. Kalicovic is the person whom [her] Interrogatory No. 1 sought" is reasonable and appropriate in the circumstance of this case. The defendant's delay in retrieving and providing Shim-Larkin with its records that identify the law enforcement personnel who were present at the 13th precinct on August 19, 2015, and its delay in interviewing its employees about the identity of the PAA's supervisor contributed to Shim-Larkin's inability to make timely assessments about whom she ought to depose before the close of discovery. The defendant's attempt to explain its delay, until October 2017 to commence the investigation into the identity of the PAA's supervisor, by pointing to the description Shim-Larkin provided of that person consisting of sex, race, color of shirt worn and possible rank, is to no avail. This is so because without possessing any more detailed information than that provided by Shim-Larkin, the defendant was able to commence and complete its investigation including reviewing the 13th precinct's roll call(s), Command Log(s) and schedule(s) for August 19, 2015, and interviewing 13th precinct "Police Officers, Lieutenants, Sergeants and Police Administrative Assistants [sic]" to attempt to determine the supervisor's identity. None of these investigatory activities depended upon input from Shim-Larkin, and nothing in the motion record establishes that the records reviewed by the defendant and the police personnel interviewed by it

-22-

were not under the defendant's control and available to it at all times during this litigation. Moreover, according to Shim-Larkin, prior to the commencement of its investigation in October 2017, the defendant "did not inform Plaintiff that it needs more information [from her] to start a search" into the supervisor's identity. This assertion by Shim-Larkin is not contradicted by any evidence in the motion record.

A violation of Fed. R. Civ. P. 26(e) occasioned by an untimely supplementation of an interrogatory response is sanctionable under Fed. R. Civ. P. 37(c)(1); that sanction is generally, self-executing. However, a court may impose an alternative sanction, in lieu of the self-executing sanction set forth in the Rule, by exercising the wide discretion courts have in imposing sanctions under Fed. R. Civ. P. 37. See Design Strategy, Inc. v. Davis, 469 F.3d 284, 294 (2d Cir. 2006). Shim-Larkin urges the Court to require the defendant to pay the costs associated with deposing Lt. Kalicovic as a sanction for the defendant's tardy response to interrogatory no. 1, its failure to comply with the Court's order that the defendant respond to interrogatory no. 1, by August 25, 2017, without asserting objections and the defendant's refusal to verify whether Lt. Kalicovic is the supervisor whose identity interrogatory no. 1 sought to uncover. The Court declines to do so.

The Court has already sanctioned the defendant for not meeting its interrogatory response and supplementation obligations as they relate to Shim-Larkin's first set of interrogatories. See Docket Entry No. 319. No basis exists for the Court to reconsider that sanction. Furthermore, "Rule 37 sanctions are intended to restore the parties to the position they would have occupied but for the breach of discovery obligations." In re September 11th Liability Insurance Coverage Cases, 243 F.R.D. 114, 132 (S.D.N.Y. 2007). Shim-Larkin did not incur any deposition expenses with respect to Lt. Kalicovic, because she did not depose him previously. In addition, this case does not present a situation where a party is forced to reopen a deposition because of a late disclosure of discovery material, which would support shifting discovery expenses from one party to its adversary. See, e.g., Owen v. No Parking Today, Inc., 280 F.R.D. 106, 111 (S.D.N.Y. 2011). The Court finds that reopening discovery and permitting Shim-Larkin

to depose Lt. Kalicovic, if she wishes to do so, will place her in the position she would have been in had the defendant made a reasonable inquiry into the supervisor's identity and disclosed what Shim-Larkin characterizes as the "new information" revealed through Saint-Fort's August 3, 2018 declaration, before the close of discovery. Had the defendant done these things, Shim-Larkin would have been able to assess the utility of deposing the lieutenant, before the close of discovery, and, if she determined that the deposition was warranted, she would have borne the cost of that deposition.

In opposing the instant motion, the defendant did not offer any arguments against Shim-Larkin's request that she be provided, prior to any deposition of Lt. Kalicovic, copies of pertinent 13th precinct roll calls, Command Logs and schedules and that, at the time of the deposition, the original of those documents be produced to her. The Court finds these records are relevant to the claims and defenses asserted and that the requests are reasonable and proportional to the needs of the case. See Fed. R. Civ. P. 26(b)(1). Therefore, the requests are granted.

Deem Fact Established

Shim-Larkin has requested that the Court invoke Fed. R. Civ. P. 26(g) and 37(b)(2), as well as its inherent power to deem established, for the purpose of this action, her assertion that she experienced an anxiety attack while at the 13th police precinct on August 19, 2015 and that the anxiety attack was the result of her co-worker's assault. According to Shim-Larkin, this relief is warranted because the "[d]efendant attempted to avoid its discovery obligation of providing identity of [the PAA's supervisor] through perjurious Saint-Fort Decl[aration]. A reasonable person will be able to infer from the fact that Saint-Fort committed perjury that the identity of [the PAA's] supervisor is both relevant and harmful to Defendant."

The Court has determined that Saint-Fort's declaration is not perjurious and explained why above; it will not repeat those reasons here. Therefore, the foundation, upon which Shim-Larkin relies, a perjurious declaration, for the relief she seeks, a directive that a fact be deemed established for the

-24-

purpose of this action, is lacking. For that reason alone, the Court would be warranted in denying Shim-Larkin's request but other reasons exist that also justify denying the request. It appears, from the motion record, that any anxiety attack Shim-Larkin experienced at the 13th precinct on August 19, 2015, was witnessed both by the PAA and her supervisor who were situated in close proximity to each other. Therefore, establishing that the anxiety attack occurred has never been dependant solely upon Shim-Larkin's learning, through the defendant's response to interrogatory no. 1 of her first set of interrogatories, the identity of the PAA's supervisor. Evidence, aside from Shim-Larkin's own testimony that the anxiety attack occurred, as Shim-Larkin alleges, has always been potentially available to Shim-Larkin from the PAA whose identity Shim-Larkin has known since at least April 2017, because Shim-Larkin identified the PAA by her name in interrogatory no. 1 of her first set of interrogatories. In addition, no medical evidence is in the motion record establishing that the anxiety attack Shim-Larkin alleges occurred at the 13th precinct was caused by the assault Shim-Larkin contends her mini pool co-worker perpetrated on her.

Sanctions

In accordance with Fed. R. Civ. P. 26(g)(3) and pursuant to the Court's inherent power to control the proceedings before it, for the Fed. R. Civ. P. 26(g) certification violation committed in this action, the defendant and Silverman together shall, on or before February 13, 2019, pay Shim-Larkin $1,000. The Court finds that the $1,000 sanction is not more severe than reasonably necessary to deter the defendant's counsel and the defendant specifically, and others similarly situated to them, generally from engaging in bad faith conduct of the type described above in the future. That conduct frustrated, unjustifiably, the just, speedy and economical progression of this action through the pretrial discovery phase of the litigation. See Fed. R. Civ. P. 1. In a significant way, the Rule 26(g) certification violation prompted the filing of the instant motion, as it contributed to the defendant's delay in: 1) commencing its investigation into the identity of the PAA's supervisor; and 2) sharing the results of that investigation with Shim-

-25-

Larkin timely, so that she might assess them in determining how to prosecute this action. As a consequence, the defendant shall also pay to Shim-Larkin the reasonable expenses she incurred in making the instant motion. On or before February 13, 2019, Shim-Larkin shall file evidence, via affidavit or other means, of the reasonable expenses she incurred in making the motion. Any challenge by the defendant to the reasonableness of the expenses shall be filed on or before February 27, 2019.

## CONCLUSION

For the reasons set forth above, Shim-Larkin's sanctions motion, Docket Entry No. 372, is granted, in part, and denied, in part. The period for completing pretrial discovery activities is reopened, until February 27, 2019, solely for the purpose of deposing Lt. Kalicovic.

Dated: New York, New York
      February 5, 2019

SO ORDERED:

Kevin Nathaniel Fox

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

*shim-larkin.mo6*

-26-