UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
HEENA SHIM-LARKIN,                                     :
                                                       :
                        Plaintiff,                     :
                                                       :        **MEMORANDUM AND ORDER**
                -against-                               :
                                                       :        16-CV-6099 (AJN)(KNF)
CITY OF NEW YORK,                                      :
                                                       :
                                                       :
                        Defendant.                     :
-----------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE


        Heena Shim-Larkin ("Shim-Larkin"), proceeding pro se, has made a motion, pursuant to

Rules 37(b)(2)(A)(ii),(vii) and 26(g) of the Federal Rules of Civil Procedure and the Court's

inherent power, for an order: 1) finding the defendant in contempt of court for failing "to obey

the discovery orders" issued in this action and directing the defendant to pay, on a per diem

basis, a monetary penalty for future violations; 2) prohibiting the defendant from making certain

arguments respecting the videotape produced by the defendant to Shim-Larkin in response to an

interrogatory she served; and 3) limiting the evidence the defendant may offer respecting that

videotape and an associated interrogatory, as well as the circumstances surrounding Shim-

Larkin's assignment to the Tompkins Square mini pool as a lifeguard.  Shim-Larkin also seeks

an order compelling the defendant to provide: (i) "all document(s) Vladimir Rodriguez reviewed

in preparation for his supplemental responses to Interrogatory No. 6" and "all his phone records

from both cell phone device and mobile carrier, as well as email records between [Miguel]

Morel and Vladimir Rodriguez from August 3, 2015 through September 7, 2015"; (ii) "all cell

phone records of 516-810-4906 from both cell phone device and mobile carrier from June 28,

2015 through September 7, 2015"; and (iii) "all color photos of Jacqueline [Mills]."  In addition,

Shim-Larkin seeks an order directing that: a) certain "facts be taken as established for [the] purpose of this action pursuant to FRCP 37(b)(2)(A)(i), FRCP 26(g) and the Court's inherent power"; b) the defendant's counsel be sanctioned, under the Court's inherent power, and be subjected to a monetary penalty for violating Rule 26(g) of the Federal Rules of Civil Procedure; c) the defendant's counsel be referred to the other judges of this court for "consideration of supplementary professional discipline or other corrective action" for violating Rule 26(g) of the Federal Rules of Civil Procedure; and d) the Court impose "other sanctions against Defendant and its counsels which the court deems just and proper pursuant to FRCP 26(g), FRCP 37(b)(2)(A) and the Court's inherent power."  Shim-Larkin also requests that the Court direct the defendant to pay the costs and expenses she incurred related to the motion, pursuant to Rules 26(g)(3), 37(a)(5) and 37(b)(2)(C) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927 and the Court's inherent power.  The defendant opposes the motion.

## BACKGROUND

This action arises out of Shim-Larkin's employment as a lifeguard, at the defendant's Tompkins Square mini pool, during the summer of 2015.  According to Shim-Larkin, the defendant subjected her, inter alia, to discrimination, harassment and unequal terms and conditions of employment.  During the pretrial discovery phase of the litigation, Shim-Larkin made various discovery demands upon the defendant to obtain information she believes is needed to prepare for trial.  Shim-Larkin has frequently found the defendant's responses to her discovery demands wanting, prompting her to seek judicial intervention.

**PLAINTIFF'S CONTENTIONS**

Shim-Larkin contends that she served her First Set of Interrogatories on April 25, 2017, and approximately four months later, the defendant served its response to those interrogatories, including objections.  The Court found, pursuant to Rule 33(b)(4) of the Federal Rules of Civil Procedure, that the defendant's objections had been waived, owing to the defendant's failure to respond timely to the interrogatories, and directed the defendant, through an order dated August 23, 2017, to respond to the interrogatories without asserting any objections.  Among the interrogatories in Shim-Larkin's First Set of Interrogatories that are the focus of this motion is Interrogatory No. 1.

Interrogatory No. 1 of Shim-Larkin's First Set of Interrogatories requested contact information for the defendant's current and former employees "who interacted with Plaintiff concerning her work during the summer of 2015."  The contact information sought included, inter alia, the: i) telephone number; ii) email address; and iii),where applicable, last known address of the employee(s).  Among the employees referenced specifically in Interrogatory No.1, for whom Shim-Larkin sought contact information, was an employee of the defendant described only as "the female employee of New York Department of Education who visited Tompkins Square Park on or about August 18, 2015."  The defendant supplemented its response to Interrogatory No.1 through a December 28, 2017 letter by its counsel, Dominique F. Saint-Fort ("Saint-Fort"), directing Shim-Larkin to three documents generated in August 2015 by the defendant's Department of Education, Office of School Support Services.  The three documents are identified as "DEFENDANT'S 1026-1028."  One of the three documents is styled "RACIAL/ETHNIC DATA FORM," the other two are styled "SUMMER PROGRAM SATELLITE SITE REVIEW."  The defendant's December 28, 2017 supplemental response to

3

Interrogatory No.1 was verified on October 5, 2018, by Liam Kavanagh ("Kavanagh"), the defendant's first deputy commissioner, Department of Parks & Recreation ("DPR").  Kavanagh states in his verification that the information in the defendant's December 28, 2017 supplemental response to Interrogatory No.1 is true, as it relates to DPR, and he bases that assertion on DPR 's books and records and statements made to him "by certain officers or agents of [DPR]."

Shim-Larkin contends that Kavanagh's verification "does not state that he reviewed any documents of [the Department of Education] or consulted any employee of [the Department of Education]" in connection with the defendant's December 28, 2017 supplemental response to the interrogatory.  Shim-Larkin maintains that an objectively reasonable person would have reviewed Department of Education documents and consulted with that agency's personnel to respond fully to that portion of Interrogatory No.1 that seeks information about a Department of Education employee.  Therefore, Shim-Larkin asserts that a reasonable inquiry, as contemplated by Fed. R. Civ. P. 26(g)(1), was not made before the defendant's counsel signed the December 28, 2017 supplemental interrogatory response.

Shim-Larkin notes that three names appear in DEFENDANT'S 1026-1028, the Department of Education documents to which the defendant directed her in its December 28, 2017 supplemental response to Interrogatory No.1.  Two of the names are of DPR employees with whom Shim-Larkin is familiar.  The third name, Jacqueline Mills ("Mills"), is unknown to Shim-Larkin and she asserts that the defendant did not "admit or deny whether... Mills is the female Department of Education employee who visited Tompkins Square [P]ark on or about August 18, 2015."  Although DEFENDANT'S 1026-1028 contains an address and telephone number associated with the Department of Education, Shim-Larkin contends that the defendant did not provide any contact information for Mills.  Mills is identified in DEFENDANT'S 1026-

4

1028 as the "Reviewer."

Shim-Larkin contends that in an August 5, 2019 letter, Saint-Fort stated that "DEFENDANT'S 1026-1028  represents the only official presence of a Department of Education employee being present at Tompkins Square Park of which the Department of Parks & Recreation has a record during August 2015.  To the extent that you seek information regarding Defendant's search or contact information for 'Jacqueline Mills,' those are new requests."  Shim-Larkin disagrees; she maintains that, if Mills is the female Department of Education employee who visited Tompkins Square Park on or about August 18, 2015, her contact information was requested through Interrogatory No.1.  However, if Mills is not the female Department of Education referenced in that interrogatory, then the defendant directed Shim-Larkin to DEFENDANT'S 1026-1028 "even though such documents has [sic] nothing to do with Interrogatory No. 1.  Therefore, such documents cannot be substituted for answer to Interrogatory No. 1[;] thus, Defendant failed to answer Interrogatory No. 1."

According to Shim-Larkin, "if Defendant does not have any information within its control concerning the female DOE [Department of Education] employee referenced in Interrogatory No. 1, then Defendant should clearly state so under oath.  But Defendant did not do so."  Shim-Larkin contends that she needs to determine whether Mills is the female Department of Education employee referenced in Interrogatory No. 1.  To that end, Shim-Larkin urges the Court to direct the defendant to disclose to her all color photographs of Mills it has so that Shim-Larkin may determine whether she recognizes Mills as the female Department of Education employee who visited Tompkins Square Park on or about August 18, 2015, and, thereafter, "make follow up discovery."

Interrogatory No. 2 of Shim-Larkin's First Set of Interrogatories requested that the

defendant  provide the "full name, title, address, phone number and email address for all persons who had authority to assign and/or transfer a lifeguard of Parks Department to a pool and/or beach in 2015."  Shim-Larkin contends that the defendant identified Javier Rodriguez ("JR") in responding to this interrogatory, but did not provide a complete answer to the interrogatory. Shim-Larkin notes that the defendant "did not admit or deny under oath whether [JR] had a cellular telephone issued to him by the defendant or whether he used his personal cellular telephone to perform the defendant's work.  According to Shim-Larkin, the defendant also failed to disclose "important phone numbers of [JR], including but limited to DPR issued cell phone number and 'personal' cell phone number, which was used for work purposes."  Shim-Larkin's investigation revealed that (516) 810-4906 is JR's cellular telephone number and that Martin Kravitz ("Kravitz"), who supervised Shim-Larkin and the other lifeguards with whom she worked at the Tompkins Square mini pool, contacted that number on 347 occasions during the summer of 2015.   Shim-Larkin asserts that JR used his personal cellular telephone number to perform the work assigned to him by the defendant.  Therefore, Shim-Larkin contends that: 1) the defendant's answer to Interrogatory No. 2 must be supplemented to include that cellular telephone number; and 2) the defendant must be required to provide all cellular telephone records for (516) 810-4906 "from both cell phone device and mobile carrier from June 28, 2015 through September 7, 2015."

Shim-Larkin sought, through Interrogatory No. 3, of her First Set of Interrogatories,  to obtain the defendant's lifeguard pool assignment policies and practices applicable in the summer of  2015.  However, the defendant "did not admit or deny whether there is any practice which is not a policy."  Shim-Larkin contends that, although the defendant's objection to Interrogatory No. 3 was not sustained by the court, it has failed to supplement its answer to the interrogatory.

According to Shim-Larkin, information in the motion record and her own experience demonstrate that it was the defendant's practice to assign a new lifeguard, such as she was in the summer of 2015, to a pool or beach facility that was located near the lifeguard's residence. Shim-Larkin maintains that she advised a representative of the defendant that, due to her status as a domestic violence victim, she should not be assigned to a facility in East Harlem, the neighborhood where she resided in 2015, or to one on the Upper West Side of Manhattan, the neighborhood where her former spouse resided. Shim-Larkin was assigned to a pool on the Lower East Side of Manhattan, the Tompkins Square mini pool, which is not close to either the neighborhood where she resided in 2015 or the Upper West Side of Manhattan. Shim-Larkin asserts that the defendant assigned her to the Tompkins Square mini pool "even though there are multiple pools in or close to the Upper West Side and East Harlem" to which she could have been assigned. According to Shim-Larkin, "[g]iven that Defendant did not even attempt to supplement its response to Interrogatory No. 3, even after the court's order dated June 28, 2018 (ECF #319, at 20-22) and subsequent denial of Defendant's Rule 72(a) objection, Defendant's disregarding such court orders must be willful, which warrants harsh sanctions. Therefore, Plaintiff moves the Court" to find that it was the defendant's practice, during the summer of 2015, to assign new lifeguards to locations as close as possible to where they lived or whatever pool or beach that they were qualified for and that this be taken as established for purposes of the action. Shim-Larkin also moves the Court to prohibit the defendant from introducing any matters in evidence concerning why and how she was assigned to Tompkins Square mini pool.

Shim-Larkin contends that the defendant failed to answer fully Interrogatory No. 5 of her First Set of Interrogatories. That interrogatory requested that the defendant identify all its policies and practices respecting how lifeguards were assigned regular days off during the

summer of 2015. According to Shim-Larkin, the defendant answered that it did not have an

"official" policy for assigning lifeguards regular days off in the summer of 2015 and did not

address its unofficial policy or its practices pertaining to assigning lifeguards regular days off in

the summer of 2015. Shim-Larkin asserts that, in responding to another of her interrogatories,

Interrogatory No. 7, which also inquired into the defendant's policies and practices, the

defendant answered without using the qualifier "official" and stated that it did not have any

policies or practices germane to Interrogatory No. 7. Therefore, Shim-Larkin asserts that the

defendant was aware that limiting its Interrogatory No. 5 response to its "official" policy was an

incomplete answer to that interrogatory. Furthermore, Shim-Larkin maintains that, according to

Saint-Fort, the Defendant has stated under oath that "[s]upervisors schedule staff in order to meet

the operational needs at pools and beaches and follow all applicable personnel guidelines. If

there is a conflict between the shift preferences of two staff members, the [conflict] is decided in

favor of the more senior staff member." However, Shim-Larkin contends that the defendant has

not stated, in responding to Interrogatory No. 5, whether it applies this seniority methodology to

the regular days off it assigns to its lifeguards, rendering its interrogatory answer incomplete.

According to Shim-Larkin, by providing an incomplete answer to Interrogatory No. 5, the

defendant has disregarded orders dated June 28, 2018, and March 27, 2019, requiring it to give

"specific information" about how staff is scheduled at its beaches and pools to meet the

defendant's "operational needs." Therefore, Shim-Larkin requests that the Court direct that it is

established, for purposes of this action, "that it was Defendant's practice for summer of 2015,

concerning how lifeguards were given Regular Day Offs, to decide in favor of the more senior

lifeguard, if there is a conflict between the Regular Day Off preferences of two lifeguards."

     Interrogatory No. 6 of Shim-Larkin's First Set of Interrogatories requested the

following:

> State whether each of Martin Kravitz, Javier Rodriguez (Assistant
> Lifeguard Coordinator in 2015 summer) and Vladimir (Chief
> Lifeguard in 2015 summer) was informed of the existence  the
> video of Plaintiff which was taken on or about August 4, 2015 by
> Miguel Morel. If not, explain why not, and if so, state whether
> each of them (a) received a copy of the video, if so, in what way;
> (b) was provided an opportunity to review the video; and (c)
> reviewed the video. Please send the video to Plaintiff's email.

According to Shim-Larkin, a reasonable reading of the sentences that comprise

Interrogatory No. 6 "is that 'the video' mentioned in 'second sentence' and 'third sentence' is

'the video of Plaintiff which was taken on or about August 4, 2015 by Miguel

Morel["(Morel)"]', as defined in the 'first sentence.'"  However, in an October 13, 2017 letter

prepared by Saint-Fort, counsel advised Shim-Larkin that, "construing Plaintiff's request as

seeking a copy of a video that was taken during the Summer of 2015 which appears to include a

video recording of Plaintiff, Defendant refers Plaintiff to a copy of a video, produced herewith,

identified as DEFENDANT'S VIDEO 1."  In a verification prepared subsequently by Vladimir

Rodriguez "Rodriguez") that was provided to Shim-Larkin and pertains to the DEFENDANT'S

VIDEO 1, Rodriguez states that DEFENDANT'S VIDEO 1 "was in his possession custody and

control," he supplied it to Saint-Fort, and that same video, DEFENDANT'S VIDEO 1, was

produced to Shim-Larkin on October 13, 2017.  This verification followed an earlier Rodriguez

verification in which Rodriguez stated that information provided by the defendant in response to

Interrogatory No. 6, as it pertains to him, is true.  Shim-Larkin contends that, since neither Saint-

Fort's letter nor Rodriguez's verifications stated definitively that DEFENDANT'S VIDEO 1 is

"the video of Plaintiff which was taken on or about August 4, 2015 by Miguel Morel," she found

these responses from the defendant evasive and requested that the defendant "correct its

evasiveness."  However, Shim-Larkin maintains that Saint-Fort stated twice that Interrogatory No. 6 "does not request whether the video referenced is 'the video of Plaintiff which was taken on or about August 4, 2015 by Miguel Morel.' Nor have you made that specific request in another interrogatory."  Shim-Larkin contends that Saint-Fort's reading of Interrogatory No. 6 is unreasonable and, therefore, Saint-Fort "violated FRCP 26(g) by not making reasonable inquiry such as reasonable reading of Interrogatory No. 6."  Furthermore, according to Shim-Larkin, the defendant's failure to state unequivocally that DEFENDANT'S VIDEO 1 is the video taken of her on or about August 4, 2015 by Morel constitutes a violation of Rule 33(b)(3) of the Federal Rules of Civil Procedure, which requires that an interrogatory be answered fully, and the defendant's violation of the Rule may affect adversely her ability to use the defendant's answer to Interrogatory No. 6 as evidence at trial, as contemplated by Fed. R. Civ. P. 33(c).  In addition, Shim-Larkin notes that an evasive or incomplete answer to an interrogatory is treated as a failure to answer under Fed. R. Civ. P. 37(a)(4).

According to Shim-Larkin, "[c]onsidering that i) Defendant failed to fully answer Interrogatory No. 6 over 2 years, from August 25, 2017 (the deadline set in Aug 23, 2017 order at ECF #119) up to date; ii) SaintFort [sic] asserted facially untenable interpretation of Interrogatory No. 6 in bad faith; and iii) [the defendant has] repeatedly includ[ed] objections, harsh sanctions are warranted."  Therefore, Shim-Larkin, relying on Fed. R. Civ. P. 37(b)(2)(A), urges the Court, as a sanction, to: 1) "direct the fact that video bearing Bates No. DEFENDANT'S VIDEO 1 is 'the video of Plaintiff which was taken on or about August 4, 2015 by Miguel Morel' be taken as established for purposes of the action[;] 2) direct the fact that the term, 'the video,' used in all answers to interrogatory No. 6 is 'the video of Plaintiff which was taken on or about August 4, 2015 by Miguel Morel'[;] 3) prohibit Defendant from asserting any

arguments similar to Saint-Fort's previous statements that 'construing Plaintiff's request as seeking a copy of a video that was taken during the Summer of 2015 which appears to include a video recording of  Plaintiff, Defendant refers Plaintiff to a copy of a video, produced herewith, identified as DEFENDANT'S VIDEO 1.' in Oct 13, 2017 letter (ECF #165-3, at 3), and that 'This interrogatory does not request whether the video referenced is the video of Plaintiff which was taken on or about August 4, 2015, by Miguel Morel.  Nor ha[s] [Plaintiff] made that specific request in another interrogatory.  Defendant has fully responded to this interrogatory' in Oct 3, 2019 letter...and Jan 21, 2020 letter [;] and 4) prohibit Defendant from introducing any matters in evidence concerning Saint-Fort's previous statements that 'construing Plaintiff's request as seeking a copy of a video that was taken during the Summer of 2015 which appears to include a video recording of Plaintiff, Defendant refers Plaintiff to a copy of a video, produced herewith, identified as DEFENDANT'S VIDEO 1.' in Oct 13, 2017 letter (ECF #165-3, at 3), and that 'This interrogatory does not request whether the video referenced is the video of Plaintiff which was taken on or about August 4, 2015 by Miguel Morel.  Nor ha[s] [Plaintiff] made that specific request in another interrogatory.  Defendant has fully responded to this interrogatory' in Oct 3, 2019 letter...and in Jan 21, 2020 letter."

In a document dated January 21, 2020, and styled "DEFENDANT'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES," Rodriguez indicated that he viewed DEFENDANT'S VIDEO 1, which had been sent to him by Morel, but Rodriguez "does not recall how he received the video referenced in" Interrogatory No. 6.  A verification by Rodriguez dated February 13, 2020, accompanied the January 21, 2020 document.  Shim-Larkin contends that, inasmuch as Rodriguez's February 13, 2020 verification "does not state that he reviewed any document, such as cell phone device, phone records, or

email records, [this] indicates lack of reasonable inquiry required before signing discovery response under FRCP 26(g)." As a consequence, Shim-Larkin "respectfully requests for additional discovery, i) all document(s) Vladimir Rodriguez reviewed in preparation of his supplemental responses to Interrogatory No. 6; and ii) all his phone records from both cell phone device and mobile carrier, and email records between Morel and Vladimir Rodriguez from August 3, 2015 through September 7, 2015." Shim-Larkin maintains that she could not have made this discovery demand previously, because the defendant did not provide this supplemental interrogatory response and Rodriguez's accompanying verification until February 2020.

The defendant, in a document styled "DEFENDANT'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES," dated November 22, 2019, provided additional answers to Interrogatory No. 6 through Kravitz. The November 22, 2019 document is accompanied, inter alia, by a December 20, 2019 verification signed by Kravitz and directed to so much of the November 22, 2019 document as pertains to him. Two of the defendant's supplemental responses pertaining to Kravitz referred Shim-Larkin to a specific question and answer appearing in the transcript of the deposition testimony Kravitz provided for this action. Shim-Larkin notes that: i) Saint-Fort objected to the form of the question that was posed to Kravitz during his deposition; and ii) the defendant incorporated that objection into the two relevant November 22, 2019 supplemental responses verified by Kravitz, notwithstanding the Court's August 23, 2017 order that the defendant answer Shim-Larkin's First Set of Interrogatories without asserting any objections and the June 28, 2018 sanction imposed on the defendant for continuing to assert objections to some of the interrogatories in Shim-Larkin's First Set of Interrogatories, after the Court's August 23, 2017 order was issued. Shim-Larkin maintains that the Court's August 23, 2017 order requires that the objection to form

12

asserted by Saint-Fort be removed from the defendant's supplemental interrogatory answer, "[b]ut Saint-Fort refused to exclude such objection from the interrogatory answer" and refused to "confirm in writing that Defendant will not rely on that objection included in the deposition transcript at trial."  According to Shim-Larkin, "[s]ince Saint-Fort repeatedly disregarded Aug 23, 2017 Order..., it warrants severe sanctions."

The defendant's November 22, 2019 document also provided additional responses to Interrogatory No. 6 through JR.  JR maintained that he was not informed of the existence of the video referenced in the interrogatory.  Furthermore, JR asserted that he neither received a copy of the video nor reviewed the video.  A December 20, 2019 verification signed by JR and directed to that portion of the November 22, 2019 document which pertains to him was provided to Shim-Larkin.  Shim-Larkin contends that JR's verification does not indicate that JR reviewed any documents to assist the defendant in responding to Interrogatory No. 6.  Shim-Larkin asserts that the defendant's determination to allow JR to rely solely on his memory, when it supplemented its response to  Interrogatory No. 6, "does not meet the reasonable inquiry standard under FRCP 26(g)."

Shim-Larkin contends that the above-cited instances demonstrate that Saint-Fort signed the defendant's supplemental interrogatory responses repeatedly, without ensuring that reasonable inquiries were made before the information in those responses was disclosed to her. According to Shim-Larkin, Fed. R. Civ. P. 26(g) imposed this reasonable inquiry obligation on Saint-Fort, although the defendant's supplemental interrogatory responses were verified by others.  In support of this contention, Shim-Larkin relies on the 1983 Advisory Committee Notes to Fed. R. Civ. P. 26(g) which explain that an attorney's signature on an interrogatory response "certifies that the lawyer has made a reasonable effort to assure that the client has provided all

13

the information and documents available to him that are responsive to the discovery demand."

Shim-Larkin maintains that the defendant's supplemental responses to her First Set of Interrogatories, which were signed by defendant's counsel and are the subject of this motion, contained, on some occasions, "general objections" and on others unspecified objections all of which violated the Court's August 23, 2017 order that the defendant respond to her First Set of Interrogatories without asserting any objections.  According to Shim-Larkin, Saint-Fort acted "willfully and blatantly" in disregarding court orders and thereby violated Fed. R. Civ. P. 26(g).

Shim-Larkin contends that Saint-Fort's conduct warrants sanctions, including but not limited to,"a monetary penalty of $3,000, reprimand, and referring her to the other judges in the Southern District for consideration of supplementary professional discipline or other corrective action."  Shim-Larkin requests that the Court treat the defendant's "repeated" failure to obey discovery orders as contempt of court, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vii), "and order $250 per day for future violation of orders."  According to Shim-Larkin, "[c]onsidering [the] severity, duration, [and] willfulness of Defendant's misconducts explained above," a "per diem fine of $250 per day [should be imposed on the defendant] until Defendant fully answers Interrogatories, which must be formed after reasonable inquiry, without asserting any objections, to enforce [sic] Defendant to comply with discovery orders."  In addition, Shim-Larkin requests that the Court "order Defendant to pay Plaintiff costs and  expenses occurred [sic] in relation to instant motion, including copying, printing, and transportation.  Since Defendant unreasonably multiplied proceedings, including 'meet and confer' procedures in bad faith, 28 U.S.C. § 1927 must be also applied, in addition to the other provisions in FRCP 26 and 37."

### DEFENDANT'S CONTENTIONS

The defendant contends that the instant motion "must be denied in its entirety" because

the defendant "has provided responses to the interrogatories within Plaintiff's First Set of Interrogatories which she claims are incomplete, and has not disobeyed the Orders of this Court requiring it to respond to those interrogatories without objection." According to the defendant, Shim-Larkin has attempted "to broaden the scope of most of the interrogatories at issue to include requests that are not contained within those interrogatories," and is seeking sanctions against the defendant for her "failure to utilize discovery tools," during the pretrial discovery phase of the action "which expired close to two years ago," to obtain "the information that she seeks."

The defendant contends that, with respect to Interrogatory No. 1 of Shim-Larkin's First Set of Interrogatories, it "supplemented its response to Plaintiff's request for contact information for the New York City Department of Education employee on December 28, 2017, by referring Plaintiff to DEFENDANT'S 1026-1028, records from the summer meals program at Tompkins Square Mini Pool ("TSMP") during the summer of 2015, which includes contact information for the employee of the Department of Education who was assigned to review the summer meals program at TSMP." Moreover, the defendant maintains that "Plaintiff previously argued in her July 20, 2018 Cross-Motion for Sanctions that Defendant's response [to Interrogatory No. 1] was incomplete because it did not include a verification. Plaintiff did not raise the argument she currently advances, namely that the documents Defendant provided in response to her vague request for contact information for a New York City Department of Education employee was incomplete because it did not include contact information for the Department of Education employee listed in those documents, Jacqueline Mills."

The defendant asserts that "at no time prior to [the] instant motion for sanctions including during such time that discovery was ongoing, did Plaintiff once request that Defendant provide

her *additional* contact information for Ms. Mills." The defendant maintains that, in any event, as

it reported previously in Docket Entry No. 351, at page 10, its investigation in connection with

Interrogatory No. 1, did not uncover more information to assist in identifying the person noted in

that interrogatory. The defendant notes that, after Shim-Larkin received the December 28, 2017

supplemental response to Interrogatory No.1, she did not indicate "to Defendant that Jacqueline

Mills was in fact the Department of Education employee whose contact information she sought,

or that she could have been that individual." Furthermore, Shim-Larkin never indicated, in the

two years since she received DEFENDANT'S 1026-1028, that she "attempted to contact Ms.

Mills through the contact information listed in the documents Defendant produced and was

unable to reach her." The defendant contends that Shim-Larkin has possessed information that

would enable her to secure evidence she considers relevant to this action, but Shim-Larkin has

failed to avail herself of that information.

    With respect to Shim-Larkin's assertion that the defendant "did not admit or deny

whether Jacqueline Mills is 'the female employee of New York City Department of Education

who visited Tompkins Square [P]ark on or about August 18, 2015,'" the defendant maintains

that it does not know whether Mills is that person. According to the defendant, only Shim-

Larkin can make that determination. Therefore, the defendant "is unable to definitively state

whether in fact Ms. Mills is the person whose contact information Plaintiff seek[s]." The

defendant asserts that Shim-Larkin "never served" it with a request for admission respecting

Mills' presence at Tompkins Square Park on or about August 18, 2015, although this is a

"discovery tool which Plaintiff has previously utilized throughout the" pretrial discovery phase

of this action. "Similarly, Plaintiff's instant request that Defendant be compelled to produce

color photos of Jacqueline Mills...could have been made soon after Defendant's December 28,

2017 supplemental response, but was not and discovery in this case closed January 23, 2018."

The Defendant asserts that its response to Interrogatory No. 2, which sought contact information for JR, is complete.  The defendant explains that the assigned district judge's March 27, 2019 order disposing of the defendant's objection to the Court's June 28, 2018 order indicated that it was not error for the Court to hold that the defendant did not respond to the interrogatory fully, when it "failed to provide email addresses for individuals named in the interrogatories."  According to the defendant, the assigned district judge's order was limited to the defendant's failure to provide Shim-Larkin with email addresses, a position it has articulated to Shim-Larkin repeatedly. The defendant notes that Shim-Larkin never sought "clarification of the [March 27, 2019] order, nor did she object to that order," based on its limited focus on the defendant's failure to provide email addresses.  The defendant contends that, "given the plain language of the March 27, 2019 Order," and the fact that JR did not have a DPR issued email address, which was attested to in a July 9, 2018 verification, its "response to this interrogatory is complete."  Furthermore, the defendant maintains that Shim-Larkin's sanctions request, as it relates to the telephone number she associates with JR, is "premised...on a supposition."  The defendant observes that, "absent from her motion is that she in fact called the number and confirmed that it was Mr. Rodriquez['s]" telephone number. The defendant contends that, inasmuch as JR "is not named as a Defendant in this litigation...there is no prohibition to Plaintiff contacting him directly."  The defendant asserts that Shim-Larkin's failure to do so, "is yet further demonstration that Plaintiff seeks to extend this litigation needlessly as she ha[s] made no concerted effort to use the discovery that has been provided her to amplify or give substance to her claims."

The defendant maintains that its response to Interrogatory No. 3, regarding its lifeguard

pool assignment policies and practices, is also complete.  According to the defendant, although the Court's June 28, 2018 order explained that the defendant had violated both Local Civil Rule 33.3 of this court and Rule 33(d) of the Federal Rules of Civil Procedure and thereby failed to respond fully to Interrogatory No. 3, the holding in the assigned district judge's March 27, 2019 order overruling the defendant's objections and affirming the Court's determination was narrow, stating only "that it was improper for Defendant to rely on Local Civil Rule 33.3;... the Court did not address the June 28, 2018 Order's holding that Defendant failed to comply with FRCP 33(d)."  The defendant asserts that, "[b]ased on these orders, Defendant understood that its reliance on Local Civil Rule 33.3 in responding to [Interrogatory No.3] was improper, but a supplemental response was not required because Defendant was not found to have violated FRCP 33(d).  Defendant's objections to June 28, 2018 order specifically addressed its compliance with FRCP 33(d), and the [assigned district judge] did not find that Defendant violated FRCP 33(d) in [its] response, only that Defendant improperly asserted an objection based on  Local Civil Rule 33.3."  According to the defendant, its "interpretation [of the March 27, 2019 order] is wholly reasonable given the language of the March 27, 2019 order."

The defendant maintains that its complete response to Interrogatory No. 5, which sought its policy respecting how lifeguard regular days off were determined in the summer of 2015, emerges when its original response to that interrogatory, which the Court found evasive, is coupled with its supplemental response, that no official policy regarding lifeguard regular days off exists.  The defendant contends that Shim-Larkin's complaint, that the defendant has limited its response to its official policy only, is baseless.  According to the defendant, Saint-Fort advised Shim-Larkin on October 3, 2019, "that in Defendant's initial response to this interrogatory it had, in fact, provided Defendant's unofficial policy on this issue."  Since,

"Defendant has informed Plaintiff that [it] has no 'official' [policy] and has delineated its 'unofficial policy' or practice [for assigning] regular days off to its lifeguards[,] Plaintiff now nonsensically seeks as a sanction that the Court deem established the following alleged fact: 'it was Defendant's practice for summer of 2015, concerning how lifeguards were given Regular Day Offs, to decide in favor of the more senior lifeguard, if there is a conflict between the Regular Day Off preferences of two lifeguards,' '[t]he very response that Defendant initially provided in response to this  interrogatory, which Plaintiff argued was incomplete and evasive.'" The defendant asserts that Shim-Larkin's request demonstrates that "Plaintiff seeks only to waste the Court's time on this issue"; accordingly, no sanction is warranted.

The defendant contends that, with respect to Interrogatory No. 6, which sought, inter alia, information concerning Morel's video of Shim-Larkin made on or about August 4, 2015, including whether particular employees of the defendant received it, viewed it or knew of its existence, it has supplemented its initial response to this interrogatory on several occasions and has provided verifications from Kravitz, Rodriguez and JR attesting to the veracity of the responses the defendant supplied to Shim-Larkin respecting Interrogatory No. 6, as those responses pertain to Kravitz, Rodriguez and JR and their relationship to the video.  In addition, the defendant maintains that Shim-Larkin's assertion that it violated the Court's order in responding to Interrogatory No. 6 through Kravitz, because "the deposition testimony [of Kravitz] referred to as part of the response [to Interrogatory No. 6] include[s] objections to questions posed during the deposition...lacks merit[,] as the response to the interrogatory itself does not include any objections."  Instead, "[a]fter giving a clear response to the interrogatory, Defendant referred Plaintiff to that deposition testimony because the issues raised in the interrogatory were raised during Mr.  Kravitz's deposition.  Thus, that testimony under oath

19

provides Plaintiff with further information regarding the issues raised in the interrogatory."
According to the defendant, ["t]o the extent that the Court deems that Defendant's objections to
the form to question in the cited deposition testimony is an objection to the interrogatory," it
should "simply strike those portions of Defendant's November 22, 2019 supplemental response
to Interrogatory No. 6 which refer to Mr. Kravitz's deposition testimony," rather than impose a
sanction on the defendant as Shim-Larkin urges.

The defendant asserts that Shim-Larkin's apprehension over whether DEFENDANT'S
VIDEO 1 produced to her is the Morel video of her made on or about August 4, 2015, is
unfounded, as is her assertion that the defendant violated Fed. R. Civ. P. 33(b)(3). According to
the defendant, it provided Shim-Larkin with DEFENDANT'S VIDEO 1 in response to that
portion of Interrogatory No. 6 that requested that the Morel video of Shim-Larkin made on or
about August 4, 2015, be sent to Shim-Larkin by an email message and, thus, it did not violate
Fed. R. Civ. P. 33(b)(3). Moreover, "[t]he manner in which Interrogatory No. 6 is drafted
assumes the existence of the video referenced therein. Thus, Defendant's substantive responses
to the interrogatory – namely producing a copy of the video and stating whether certain
individuals had seen the video – necessarily refer to the video Plaintiff defined as 'the video of
Plaintiff which was taken on or about August 4, 2015 by Miguel Morel.'" The defendant asserts
that, "by producing the video in response to the interrogatory, as requested, Defendant is
indicating that DEFENDANT'S VIDEO 1 is the video referenced in Interrogatory No. 6."
Therefore, no reason exists for the Court to deem established, for the purpose of this action, that
DEFENDANT'S VIDEO 1 is the video referenced in Interrogatory No. 6. The defendant notes
that this is a request made previously by Shim-Larkin in a July 20, 2018 cross-motion for
sanctions that was opposed by the defendant because Shim-Larkin "had failed to specifically

make a discovery request regarding whether DEFENDANT'S VIDEO 1 is the video of Plaintiff which was taken on or about August 4, 2015 by Miguel Morel." The defendant maintains that Shim-Larkin's July 20, 2018 cross-motion was denied in its entirety by the assigned district judge, as part of the court's March 27, 2019 order. The defendant contends that, as a consequence, Shim-Larkin "should not be permitted to seek the same sanction that was previously denied by th[e court]."

The defendant asserts that, on July 23, 2019, and September 13, 2019, when Shim-Larkin questioned whether the "video Defendant produced in response to Interrogatory No. 6, was actually the video Plaintiff referenced in the Interrogatory," the defendant "understood this inquiry to seek authentication of DEFENDANT'S VIDEO 1," which the defendant viewed as "a new discovery request" that was untimely, because "the time to make a new request has passed." The defendant contends that Shim-Larkin's assertion, that its reading of her inquires as seeking authentication of the video is an unreasonable reading, is not tenable. According to the defendant, the arguments Shim-Larkin advances now to support her view of what a reasonable reading of Interrogatory No. 6 is would be justified only if the defendant had disclosed DEFENDANT'S VIDEO 1 to her prior to the service of Interrogatory No. 6. "Plaintiff could then request verification or see[k] to authenticate whether DEFENDANT'S VIDEO 1 is the video referenced in the interrogatory." The defendant maintains that "the more reasonable reading of this circumstance is that Defendant produced of [sic] DEFENDANT'S VIDEO 1 because it is the video reference [sic] in Interrogatory No. 6." According to the defendant, Shim-Larkin's failure to make any "effort to authenticate the video which was produced to her on October 23, 2017, is not Defendant's fault nor its responsibility. Indeed, it further exemplifies Plaintiff harassing and unreasonable conduct throughout this litigation."

21

The defendant contends that the use of the phrase "supplemental responses and objections" in the "captions" of the supplemental responses it provided to Shim-Larkin's First Set of Interrogatories is not, as Shim-Larkin asserts, a violation of the Court's order that the defendant's responses to those interrogatories be made without any objections.  This is so because no objections, as contemplated by Fed. R. Civ. P. 33(b)(4), were asserted by the defendant in its supplemental responses.  Furthermore, Fed. R. Civ. P. 34(b)(4) makes clear that objections to an interrogatory must be stated with specificity or they are waived, unless a court, for good cause, excuses the failure.  The defendant maintains that "it is unclear how the use of the caption 'supplemental responses and objections' is a violation of [the] requirement under FRCP 26(g) to make a reasonable inquiry into the request and impose responses or objections for a proper purpose which are warranted by existing law [because] Defendant did not include any objections and thus, Plaintiff's request [for a sanction] must be denied."

The defendant maintains that Shim-Larkin's requests that the Court impose a "$3,000 monetary sanction" on Saint-Fort and refer her for disciplinary action by other judges of this court is unwarranted and "unduly harsh" because, unlike the circumstances in the case upon which Shim-Larkin relies in making her requests, Saint-Fort has neither engaged in conduct that has delayed this action nor made misrepresentations to the Court in violation of Fed. R. Civ. P. 11.  According to the defendant, it is Shim-Larkin who has delayed the progress of the action by making irrelevant discovery demands and numerous meritless motions.  The defendant contends that it is not in contempt of any court order and no contempt finding should be made by the Court, as requested by Shim-Larkin.  Moreover, Shim-Larkin should not be awarded costs or fees associated with this motion" because the defendant "has not engaged in any sanctionable conduct."

22

**PLAINTIFF'S REPLY**

Shim-Larkin contends that the defendant did not make a reasonable inquiry with respect to identifying the female Department of Education employee who visited Tompkins Square Park on or about August 18, 2015, because, as discussed above, the defendant relied upon Kavanagh in making its supplemental response to Interrogatory No. 1, and Kavanagh's verification indicates that he did not rely on Department of Education records or personnel to formulate the defendant's supplemental response to that interrogatory. Shim-Larkin maintains that the defendant could have inquired of Mills whether she visited the park on or about August 18, 2015, but the defendant has not indicated that it did. Thus, the defendant's assertion that Shim-Larkin is the only one who can determine whether Mills visited Tompkins Square Park on or about August 18, 2015, is wrong. Shim-Larkin also contends that the defendant did not provide contact information for Mills as it alleges. Shim-Larkin notes that the defendant did not provide Mills's "direct telephone number or the extension to her desk at work, her cell phone number of any kind, or her email address of any kind."

Shim-Larkin asserts, with respect to Interrogatory No. 2, that the defendant must provide information about JR's telephone number because it was used to conduct DPR business in the summer of 2015, as demonstrated by Kravitz's telephone records. According to Shim-Larkin, the defendant did "not present any evidence which contradicts Plaintiff's position," that JR's telephone number was used to conduct DPR business in the summer of 2015. In addition, Shim-Larkin contends that the defendant is wrong when it claims that the Court's June 28, 2018 order finding that the defendant did not answer Interrogatory No. 2 fully was limited to the defendant's failure to provide email addresses, as the Court only cited that as one example of the defendant's failure to respond to the interrogatory fully, "not an exhausted list of missing information."

23

Furthermore, based on Second Circuit jurisprudence, the assigned district judge's silence in the March 27, 2019 order regarding "personal" telephone numbers cannot be construed as a modification of the Court's June 28, 2018 order from one that provided an example demonstrating why the defendant had not answered the interrogatory fully to an order finding that in all respects, save one, the defendant responded to Interrogatory No. 2 fully.

Concerning Interrogatory No. 3, Shim-Larkin contends that the Court's June 28, 2018 order identified "multiple grounds," including the defendant's failure to comply with Fed. R. Civ. P. 33(d) and its improper reliance on Local Civil Rule 33.3 of this court, in finding that the defendant did not respond fully to that interrogatory.  Shim-Larkin notes that the defendant objected only to the Court's reliance on Fed. R. Civ. P. 33(d), and the assigned district judge's March 27, 2019 order addressing the defendant's objection focused only on Local Civil Rule 33.3, and denied the defendant's objection based on that ground.  According to Shim-Larkin, the assigned district judge did not mention Fed. R. Civ. P. 33(d).  Shim-Larkin asserts that, without making citation to any authority, the defendant states that it "understood" that it was not found to have violated FRCP 33(d).  However, Shim-Larkin maintains that the assigned district judge's silence on the defendant's failure to comply with Fed. R. Civ. P. 33(d) "cannot be treated as [the court's acceptance of] Defendant's arguments concerning" that Rule.  According to Shim-Larkin, to do so would contravene Second Circuit precedent that treats such silence as the "denial of the objection/argument *sub silentio."*  Shim-Larkin contends that, given that the defendant was  found to have used the Local Civil Rule improperly, it should have "stated all [lifeguard pool assignment] practices in question even if it [sic] was not contained in a written document" or "stated that there is no practice."  Shim-Larkin asserts that the defendant has never supplemented its response to Interrogatory No. 3, although it has supplemented its responses to

other interrogatories in her First Set of Interrogatories.

Shim-Larkin contends that, with respect to Interrogatory No. 5, concerning how lifeguard regular days off were determined, given that the defendant has no "official" policy governing this matter and has stated that staff is scheduled to meet operational needs and that all applicable personnel guidelines are followed, this must be the defendant's "unofficial" policy on this matter.   According to Shim-Larkin, after the assigned district judge's March 27, 2019 order found the defendant's response to this interrogatory was "vague" and "general" in nature, the defendant "did not make any effort to comply with" the order by providing "specifics" about DPR's "operational needs" and "all applicable [unofficial] personnel guidelines" it followed in determining lifeguard regular days off in the summer of 2015.   Therefore, Shim-Larkin maintains that the arguments she has advanced on this motion respecting this subject are unopposed.   Furthermore, Shim-Larkin contends that the defendant's assertion that the response it gave initially to Interrogatory No. 5, which was alleged by her to be evasive and incomplete, is exactly what she is now asking the Court to deem established for the purpose of this action, is wrong.   Shim-Larkin notes that she modified the language in the defendant's initial response to this interrogatory and it is that modified language that she has asked the Court to deem established for the purpose of this action.

Shim-Larkin contends that the defendant failed to oppose her argument that its October 13, 2017 letter that "construed Plaintiff's [Interrogatory No. 6] as seeking a video that was taken during the Summer of 2015..." was problematic and evasive.   Therefore, Shim-Larkin asserts that her argument is unopposed.   Shim-Larkin notes that the defendant was admonished previously by the Court not to construe her discovery demands to conform to what the defendant believes those demands should be and to permit the defendant to disclose only what the

defendant wishes to disclose.  Shim-Larkin rejects the defendant's claim that by providing

DEFENDANT'S VIDEO 1 to her in response to that portion of Interrogatory No. 6 that

requested that the video referenced in the interrogatory be provided to her it is indicating, based

on a "reasonable reading of this circumstance[,] that Defendant produced...DEFENDANT'S

VIDEO 1 because it is the video reference[d] in Interrogatory No. 6."  According to Shim-Larkin

the "Defendant failed to present any legal authority that such 'indicating' or '[purported

reasonable] reading of this circumstance' can substitute Defendant's responsibility of 'fully'

answering Interrogatory No. 6 completely in non-evasive manner under FRCP 33(b)(3) and

FRCP 37(a)(4)."

Shim-Larkin asserts that the defendant's contention that the assigned district judge's

March 27, 2019 order resolved her July 20, 2018 cross-motion, by denying it in its entirety, is

inaccurate.  Shim-Larkin maintains that, with respect to the request in the cross-motion that it be

taken as established that DEFENDANT'S VIDEO 1 is the Morel video made of Shim-Larkin on

or about August 4, 2015, the assigned district judge determined that, perforce of the general

pretrial supervision order of reference issued previously by the court, the request was a

discovery-related request reserved to the designated magistrate judge.  Therefore, without ruling

on the merits of the request, the assigned district judge denied the request and directed Shim-

Larkin to present it to the designated magistrate judge.

Shim-Larkin contends that the defendant's failure to comply with the Court's order that it

answer her First Set of Interrogatories without asserting any objections is demonstrated by the

defendant's supplemental responses to her interrogatories dated: 1) August 27, 2019, Docket

Entry No. 628-1; and 2) October 15, 2019, Docket Entry No. 604-8, as well as the supplemental

responses to Interrogatory No. 6 that refer to Kravitiz's deposition testimony.  The deposition

testimony upon which the defendant relied contains an objection to the form of the question put to Kravitz at the deposition.  Shim-Larkin maintains that the sole question before the Court is whether the defendant's supplemental responses to this particular interrogatory "included 'any' objection, regardless of whether the objection is 'to the form [of] the question' or 'to the interrogatory'" because the Court's order bars the defendant from asserting "any" objection when responding to her First Set of Interrogatories.  According to Shim-Larkin, since the relevant responses from the defendant through Kravitz's deposition testimony contain an objection, those responses do not comply with the Court's order.  Furthermore, Shim-Larkin opposes the defendant's request that the Court strike those portions of the supplemental responses that contain the objection to the form of the deposition question, should the Court deem the asserted objection to be an objection to Interrogatory No. 6.  Shim-Larkin contends that the defendant's request is a motion made in violation of Local Civil Rule Rules 7.1(a)(1) and 7.1(b) of this court; as such, the motion is improper and should not be entertained by the Court.

Shim-Larkin maintains that the defendant's contention, unsupported by any legal authority, that she should have used requests to admit or sought to depose Morel to authenticate DEFENDANT'S VIDEO 1 is misguided.  Shim-Larkin asserts that it is incumbent upon the defendant to respond fully and completely to the interrogatories she served, citing Fed. R. Civ. P. 33(b)(3) and 37(a)(4) to support her position.  According to Shim-Larkin, had the defendant responded fully and completely to her First Set of Interrogatories, instead of providing evasive responses, no need would exist to employ other discovery tools to obtain the information she has sought.

Shim-Larkin asserts that the defendant did not oppose her argument that Rodriguez's February 13, 2020 verification of that portion of the defendant's supplemental response to

Interrogatory No. 6 that relates to him "indicates lack of reasonable inquiry required under FRCP 26(g)[;] thus, certain documents [such as cellular telephone records and email message records, as more fully described above,] must be provided."  Similarly, Shim-Larkin also contends that the defendant did not oppose the argument she made respecting its failure to satisfy the "reasonable inquiry standard under FRCP 26(g)" as it relates to that portion of its supplemental response to Interrogatory No. 6 that is directed to JR's telephone records.

Shim-Larkin disputes the defendant's assertion that she has delayed the progress of this action by "making multiple meritless motions"; rather, according to Shim-Larkin, it is the defendant that has delayed the action by resisting "discovery meritlessly multiple times."  It is notable, Shim-Larkin asserts, that the defendant failed to identify precisely the meritless motions made by her to which it makes reference.  However, with respect to the motions identified in the defendant's opposition, Shim-Larkin's December 4, 2017 motion, July 20, 2018 cross-motion and August 30, 2018 motion, they were either granted in part ( December 4, 2017 and August 30, 2018 motions), or the resolution of the relevant matter (July 28, 2018 cross-motion) was deferred, since the assigned district judge believed the issue raised: the imposition of a sanction on the defendant, was discovery-related and should be addressed by the designated magistrate judge.

**DISCUSSION**

Rule 33 of the Federal Rules of Civil Procedure allows parties to serve interrogatories that relate to any matter that may be the subject of an inquiry under Rule 26(b) of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 33(a)(1), (2).  Rule 26(b) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  Fed. R. Civ.

28

P. 33(b)(3).  If a party determines that a response given to an interrogatory is "in some material respect" not complete or is incorrect, "and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," the party has a duty to supplement the interrogatory response timely to ensure that the interrogatory is answered completely and correctly.  Fed. R. Civ. P. 26(e)(1)(A).   "The obligation to update and supplement responses [to discovery demands] continues even after the close of discovery." Allen v. Colgate-Palmolive, No. 79 Civ. 1076, 1985 WL 191, at 1 (S.D.N.Y. Jan. 14, 1985).  A court may also order that a party supplement its response(s) to an interrogatory(ies).  See Fed R. Civ. P. 26(e)(1)(B).

When a party's interrogatory has not been answered or when an incomplete or evasive answer has been provided a motion for an order compelling the responding party to answer the interrogatory fully may be made.  See Fed. R. Civ. P. 37(a)(3)(B).  A successful motion to compel may result in the award to the movant of the "reasonable expenses incurred in making the motion." Fed. R. Civ. P. 37(a)(5)(A).  Motions to compel made under Rule 37 are left to the sound discretion of the court.  See United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000). Rule 37 of the Federal Rules of Civil Procedure also explains that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond."  Fed. R. Civ. P. 37(a)(4).  Such a failure exposes the defaulting party to the possibility of sanctions. See Fed R. Civ. P. 37(d)(1)(A)(ii).  In addition, Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure permits a court to sanction a party that "fails to obey an order to provide or permit discovery."  "[T]he reason for the failure to comply, and the willfulness or good faith of the party, do not affect the fact of noncompliance and are relevant only to the sanction to be imposed for the failure." *8B Charles Allan Wright, Arthur R. Miller & Richard L. Marcus, Federal*

*Practice & Procedure,* Section 2283, at 431 (3d ed. 2010).   Among the sanctions provided in Fed. R. Civ. P. 37(b)(2)(A) that a court may order are: "directing that . . . designated facts be taken as established for the purpose of the action"; "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"; and "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."  Fed. R. Civ. P. 37(b)(2)(A)(i),(ii), (vii).  "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. (b)(2)(C).

A court's "authority to impose sanctions is grounded, first and foremost, in [its] inherent power to control the proceedings that take place before [the court]."  Ransmeier v. Mariani, 718 F.3d 64, 68 (2d Cir. 2013).  A court's inherent powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  Link v. Wabash R. Co., 370 U.S. 626, 630-31, 82 S. Ct. 1386, 1389 (1962).  Owing to the very potency of a court's inherent powers, they must be exercised "with restraint and discretion."  Chambers v. NASCO, Inc., 501 U.S. 32, 44, 111 S. Ct. 2123, 2132 (1991).  Therefore, "a particularized showing of bad faith [is needed] to justify use of the court's inherent power."  U.S. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991).

Rule 26(g) of the Federal Rules of Civil Procedure obligates an attorney to sign "every discovery request, response, or objection."  Fed. R. Civ. P. 26(g)(1).  By doing so, the attorney "certifies that to the best of the person's knowledge, information and belief formed after a

reasonable inquiry . . . [the] request, response or objection, . . . is . . . not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)(1)(B)(ii).  The obligation the Rule places on an attorney to make a reasonable inquiry "is satisfied if the [attorney's investigation] and the conclusions drawn therefrom are reasonable under the circumstances.  It is an objective standard . . . .  In making the inquiry, the attorney may rely on assertions by the client . . . as long as the reliance is appropriate under the circumstances.  Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances."  Fed. R. Civ. P 26(g) Advisory Committee Notes to the 1983 Amendment.

If an attorney's certification violates Rule 26(g), without there being substantial justification for the violation, a court on motion or on its own, "must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both."  See Kosher Sports, Inc. v. Queens Ballpark Co., LLC, No. 10-CV-2618, 2011 WL 3471508, at *13 (E.D.N.Y. Aug. 5, 2011).  "The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."  Fed. R. Civ. P. 26(g)(3).  Imposing a sanction pursuant to Rule 26(g) is appropriate if signing the response, request or objection was objectively unreasonable.  See Apex Oil v. Belcher Co. of New York, 855 F.2d 1009, 1015 (2d Cir. 1988).  "The nature of the sanction [for violating Fed. R. Civ. P. 26(g)] is a matter of judicial discretion to be exercised in light of the particular circumstances."  Fed. R. Civ. P. 26(g) Advisory Committee Notes to the 1983 Amendment.

Title 28, United States Code, Section 1927,  provides that: "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred

because of such conduct."  "Imposition of a sanction under § 1927 requires a 'clear showing of bad faith.'"  <u>Oliveri v. Thompson</u>, 803 F.2d 1265, 1273 (2d Cir. 1986)(citation omitted).  A sanction imposed under section 1927, like a sanction imposed pursuant to the Court's inherent power, "is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  <u>Oliveri</u>, 803 F.2d at 1273.

"The submissions of a <u>pro se</u> litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."  <u>Triestman v. Federal Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006)(internal quotation marks and citations omitted).  The Court has applied that standard in analyzing the instant motion.

Interrogatory No. 1

The history of the pretrial discovery phase of this action demonstrates that the records and personnel of various agencies of the defendant, including DPR, the Police Department and the Department of Education, have nonprivileged information that is relevant to the claims and defenses that have been asserted in this action and, where necessary, must be examined to respond fully to Shim-Larkin's discovery demands.  The defendant's December 28, 2017 supplemental response to Interrogatory No.1, which conveyed DEFENDANT'S 1026-1028 to Shim-Larkin, is based solely on the records and personnel of DPR, as verified by Kavanagh, notwithstanding the fact that DEFENDANT'S 1026-1028 is comprised of Department of Education records.  When the defendant observed Mills's name on DEFENDANT'S 1026-1028, and suspected that she might be the female Department of Education employee whose contact information Shim-Larkin sought through Interrogatory No.1, because Mills was assigned to review a summer meals program conducted at Tompkins Square Park in August 2015, the

reasonable course of conduct, at a minimum, would have been for the defendant to inquire of

Mills to determine whether its suspicion was correct.  See Zanwoic v. Reno, No. 97 Civ. 5292,

2000 WL 1376251, at *3, n.1 (S.D.N.Y. Sept. 25, 2000) (a party must "make a reasonable

inquiry concerning the information sought in interrogatories"). The motion record contains no

evidence that the defendant made any inquiry of Mills; rather, it simply surrendered

DEFENDANT'S 1026-1028 to Shim-Larkin.  The defendant's chastisement of Shim-Larkin, in

its opposition to the instant motion, for not making an inquiry of Mills to determine whether she

is the Department of Education employee referenced in Interrogatory No. 1 is improper, as it

seeks to shift the Fed. R. Civ. P. 33(b)(3) and Fed. R. Civ. P. 26(g) responsibilities of responding

to Interrogatory No. 1 fully, after making a reasonable inquiry, from the defendant and its

counsel to Shim-Larkin.  The defendant maintains that its investigation in connection with

Interrogatory No. 1 did not uncover information beyond DEFENDANT'S 1026-1028 to assist it

in identifying the Department of Education employee noted in that interrogatory.  In support of

that contention, the defendant relies on Docket Entry No. 351, at page 10.  However, the text in

Docket Entry No. 351, at page 10, does not support the defendant's contention because it

addresses neither Interrogatory No. 1 nor the defendant's investigation pertinent to that

interrogatory.

Shim-Larkin contends that the defendant did not provide contact information for Mills

and, thus, did not answer Interrogatory No. 1 fully.  In particular, Shim-Larkin maintains that the

defendant did not provide the "direct phone number or extension to [Mills's] desk at work, her

cell phone number of any kind, or her email address of any kind."  Interrogatory No. 1 does not

request that the direct telephone number or extension at the desk of anyone be provided to Shim-

Larkin.  However the interrogatory, as drafted, and when construed liberally, as it must be by the

33

Court, encompasses a person's cellular telephone number and email address.  The defendant's

failure to provide same to Shim-Larkin for Mills renders its response to Interrogatory No.1

incomplete.  The defendant is acutely aware that failing to provide all the contact information

called for when responding to Interrogatory No.1, and in particular an email address, is

improper, as this fact has been made clear to it in prior discovery-related court orders issued in

this case.  Shim-Larkin's request that the defendant be directed to provide her color photographs

of Mills is denied.  Shim-Larkin could have made that request of the defendant before discovery

closed, but elected not to do so.

The Court finds that, by signing the defendant's December 28, 2017 supplemental

response to Interrogatory No.1, Saint-Fort certified that, to the best of her "knowledge,

information, and belief formed after a reasonable inquiry" the supplemental interrogatory

response was not "unreasonable."  Fed. R. Civ. P. 26(g)(1)(B)(iii).  However, the motion record

supports a different conclusion because it establishes that, other than extracting DEFENDANT'S

1026-1028 from DPR's files, and disclosing it to Shim-Larkin, the defendant: 1) made no

inquiry of Mills to determine whether she is the Department of Education employee whose

contact information is sought through Interrogatory No. 1; 2) did not inquire of any Department

of Education personnel to respond to Interrogatory No. 1, although DEFENDANT'S 1026-1028

comprised of Department of Education records would make such an inquiry appropriate; 3) did

not seek or review any Department of Education records beyond Defendant's 1026-1028 to

respond to Interrogatory No.1; and 4) did not respond fully to Interrogatory No.1 by providing

all the contact information for Mills enumerated in that interrogatory.  For these reasons, the

Court finds further that the defendant has not responded to Interrogatory No.1 fully and that its

December 28, 2017 supplemental response to Interrogatory No. 1 was certified by Saint-Fort

improperly, that is, without making the reasonable inquiry demanded by Fed. R. Civ. P. 26(g); therefore, a sanction is warranted.

Interrogatory No. 2

The Court directed the defendant to respond fully to Shim-Larkin's First Set of Interrogatories through its June 28, 2018 order, Docket Entry No. 319, at 28. Interrogatory No. 2 requests, inter alia, that the defendant provide the telephone number and email address for its personnel who had assignment or transfer authority over DPR's 2015 summer lifeguard staff. Shim-Larkin contends that Kravitz's telephone records demonstrate that the defendant allowed JR to use his personal cellular telephone to conduct the defendant's work, but failed to supplement its response to Interrogatory No. 2 by providing JR's cellular telephone number; therefore, the defendant's response to Interrogatory No. 2 is incomplete. According to the defendant, it has answered the interrogatory fully because, in accordance with that portion of the assigned district judge's March 27, 2019 order overruling the defendant's Fed. R. Civ. P. 72(a) objection to the Court's June 28, 2018 order, as it pertained to Interrogatory No. 2, the defendant verified that JR did not have a DPR issued email address. The defendant maintains that its failure to respond to that portion of Interrogatory No. 2 requesting email addresses was the sole basis upon which the Court, in its June 28, 2018 order, found the defendant's response to that interrogatory incomplete.

In the June 28, 2018 order, the Court addressed Interrogatory Nos. 1 and 2 together and explained that the defendant's responses to those interrogatories provide Shim-Larkin only the business addresses and business telephone numbers for its personnel who are named in the two interrogatories. However, the Court explained that "these two interrogatories seek information beyond the business addresses and business telephone numbers of the persons named in the

35

interrogatories." Docket Entry No. 319, at 18. The Court gave one illustrative example of requested information: email addresses, that the defendant did not include for all personnel in its interrogatory responses to demonstrate how the defendant's responses to those two interrogatories were incomplete. The Court selected this example because the defendant disclosed the email address of one of its employees, a clear indication to the Court that the defendant knew that a full response to Interrogatory No. 2 required it to disclose email addresses for all its personnel. Since the defendant did not disclose the email addresses for all its employees, as requested by Interrogatory No. 2, it was glaringly obvious, without the need for further scrutiny, that the defendant had not responded fully to the interrogatory, as required by Fed. R. Civ. P. 33(b)(3). Nowhere in the June 28, 2018 order did the Court state that, but for the omission of email addresses, the defendant's responses to Interrogatory Nos. 1 and 2 are complete.

Once it was on notice from the June 28, 2018 and March 27, 2019 court orders that its response to Interrogatory No. 2 was not complete, it was incumbent upon the defendant to revisit and supplement its response to Interrogatory No. 2, see Fed. R. Civ. P. 26(e)(1), and to ensure that its supplemental response to the interrogatory was in all respects complete because "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). The defendant must answer every component of Interrogatory No. 2 to satisfy the obligation imposed on it by Fed. R. Civ. P. 33(b)(3) that it respond to each interrogatory fully. The defendant's assertion now that it has responded to Interrogatory No. 2 completely, as it relates to JR, by simply addressing the portion of Interrogatory No. 2 which seeks information about his email address is incorrect, unless, as a consequence of the information revealed to the parties through Kravitz's telephone records, the

defendant has determined that it did not permit JR to conduct his DPR work in the summer of 2015 using a personal cellular telephone, as alleged by Shim-Larkin, and, therefore, no need exists to supplement its answer to Interrogatory No. 2 by supplying the telephone number for that cellular telephone to her.  See Fed. R. Civ. P. 26(e).  However, the defendant's opposition to the instant motion is silent with respect to Shim-Larkin's allegation that JR used a personal cellular telephone to perform his DPR work; thus, the motion record is devoid of any evidence from the defendant contesting that allegation.  The motion record also lacks any evidence establishing that a reasonable inquiry was made by the defendant's counsel - prior to signing and tendering the defendant's supplemental response to Interrogatory No. 2 to Shim-Larkin - concerning  the allegation that JR used a personal cellular telephone to conduct his DPR work during the summer of 2015.  Therefore, the Court finds, based on the motion record, that the defendant's counsel did not make a reasonable inquiry before signing the defendant's supplemental response to Interrogatory No. 2 and that the defendant failed to respond fully to that interrogatory by disclosing to Shim-Larkin the telephone number of the personal cellular telephone JR used to perform the defendant's DPR work during the summer of 2015; therefore, a sanction is warranted.

Shim-Larkin's request that the Court direct the defendant to provide her records for the telephone number (516) 810-4906 "from both cell phone and mobile carrier from June 28, 2015 through September 7, 2015," is denied.  Interrogatory No. 2 did not request that such information be provided by the defendant, and the time for serving new interrogatories has expired.

Interrogatory No. 3

The defendant contends that its response to Interrogatory No. 3, regarding its lifeguard pool assignment policies and practices, is complete because in the March 27, 2019 order

overruling its Fed. R. Civ. P. 72(a) objection to the two grounds (Local Civil Rule 33.3 of this court and Fed. R. Civ. P. 33(d)) on which the Court's June 28, 2018 order relied in finding that the defendant had not responded to the interrogatory fully, the assigned district judge ruled only on the argument advanced by the defendant concerning Local Civil Rule 33.3.  Therefore, the defendant "understood" that it "was not found to have violated FRCP 33(d)" and, consequently, it did not need to supplement its response to Interrogatory No. 3.  The defendant made no citation to any authority supporting the understanding of the March 27, 2019 order at which it arrived.

The Court finds that the defendant's understanding of the relevant portion of the March 27, 2019 order is undermined by Second Circuit jurisprudence and case law cited favorably by that court explaining that the failure by a court reviewing a Fed. R. Civ. P. 72(a) objection to rule on an objector's argument(s) is "tantamount to [a]... rejection" of the argument(s).  Fielding v. Tollaksen, 510 F.3d 175, 178-79 (2d Cir. 2007).  Given that the Court determined previously, in June 2018, that the defendant did not respond to Interrogatory No. 3 fully and the defendant's objection to the Court's finding was in all respects rejected by the assigned district judge, the defendant's assertion, in opposition to the instant motion, that it has responded to the interrogatory fully and that its response needs no supplementation is meritless.  The defendant's failure to respond to the interrogatory fully, as ordered by the Court, warrants a sanction.

Interrogatory No. 5

The defendant's assertion: that its initial vague and general response to Interrogatory No. 5, which mentioned opaquely applicable personnel policies and its beach and pool facilities' operational needs, and the methodology the defendant employed for resolving shift preference disputes among employees, when read in conjunction with its supplemental response declaring

that no official policy covering the allocation of regular days off for lifeguards exists, answers

the interrogatory fully, is incorrect.  The defendant failed, through its supplemental response, to

identify with particularity the personnel policies to which it made reference, so that Shim-Larkin

might review the policies, nor did it state with specificity what the operational needs are that

informed how lifeguard regular days off were allocated in the summer of 2015.  Moreover, the

defendant did not state definitively that the seniority methodology it applied in the summer of

2015 when resolving shift preference disputes, governed the allocation of lifeguard regular days

off.  Although the defendant advised Shim-Larkin in its supplemental response to Interrogatory

No. 5 that it had "no further information to provide in response to this interrogatory," it must be

the case that the defendant knows exactly which of the defendant's personnel policies it

referenced in its initial response to the interrogatory and precisely what the operational needs are

to which it made reference in that same response and can provide that "further information" to

Shim-Larkin.  A reasonable inquiry by the defendant's counsel before signing the defendant's

supplemental response to Interrogatory No. 5 would likely have identified precisely the relevant

personnel policies and the particular operational needs discussed in the defendant's initial

response to the interrogatory and this "further information" should have been disclosed to Shim-

Larkin by the defendant to fulfill its supplementation obligation, see Fed. R. Civ. P. 26(e)(1), and

to satisfy the mandate of Fed. R. Civ. P. 33(b)(3), that the defendant respond to an interrogatory

fully.  The Court finds, based on the motion record, that the defendant did not respond fully to

Interrogatory No. 5, by disclosing to Shim-Larkin exactly what its policies and practices

respecting the allocation of lifeguard regular days off were in the summer of 2015 and, further,

that its counsel failed to make the requisite reasonable inquiry before signing the defendant's

supplemental response to Interrogatory No. 5; therefore, a sanction is warranted.

Interrogatory No. 6

A. DEFENDANT'S VIDEO 1

Shim-Larkin's use, in Interrogatory No. 6, of the only definite article in the English language, "the," in reference to the Morel video taken of her on or about August 4, 2015, limited the defendant's response to that specific, unique and particular video. Therefore, it was unnecessary and improper for the defendant to construe Interrogatory No. 6 as it did, and to use the indefinite article "a" to formulate its evasive response to the interrogatory. The Court has previously admonished the defendant that construing Shim-Larkin's discovery demands to conform to what the defendant believes those demands should be and to permit the defendant to disclose only what the defendant wishes to disclose is improper. In this circumstance, using the indefinite article, "a," in responding to Interrogatory No. 6 allowed the defendant to: 1) avoid referring to the specific, unique and particular video described by Shim-Larkin in that interrogatory: the Morel video of Shim-Larkin made on or about August 4, 2015; and 2) pretend that Interrogatory No. 6 does not require the defendant to limit its response to the video referenced in Interrogatory No. 6, the Morel video of Shim-Larkin made on or about August 4, 2015, and, further, that it need not indicate affirmatively that its response concerns only the Morel video of Shim-Larkin made on or about August 4, 2015. The defendant's claim that Shim-Larkin's Interrogatory No. 6 did not require it to state affirmatively that the video referenced in the interrogatory was the Morel video made of Shim-Larkin on or about August 4, 2015, and that Shim-Larkin's post-response demands for such a statement represented new and untimely requests, is undermined by its assertion, in opposition to this motion, that the defendant's mere production of DEFENDANT'S VIDEO 1 to Shim-Larkin "in response to the interrogatory, as requested, ...[indicates] that DEFENDANT'S VIDEO 1 is the video referenced

in Interrogatory No. 6." If this is so, the defendant's refusal to state definitively to Shim-Larkin

that DEFENDANT'S VIDEO 1 is the Morel video of Shim-Larkin made on or about August 4,

2015, referenced in Interrogatory No. 6 is baffling and it calls into question the defendant's good

faith in fulfilling its obligation to answer the interrogatory fully, as required by Fed. R. Civ. P.

33(b)(3). Based on the motion record, it is clear that the defendant understood to which video

Interrogatory No. 6 pertained; its response and supplemental responses to the interrogatory were

impermissibly evasive, see Fed. R. Civ. P. 37(a)(4). However, the defendant's assertion, in

opposition to the motion, that its production of DEFENDANT'S VIDEO 1 to Shim-Larkin

indicates "that DEFENDANT'S VIDEO 1 is the video referenced in Interrogatory No. 6" is a

judicial admission. "A judicial admission is a statement made by a party or its counsel which

has the effect of withdrawing a fact from contention and which binds the party making it

throughout the course of the proceeding." In re Motors Liquidation Co., 957 F.3d 357, 360 (2d

Cir. 2020). "[I]n order for a statement to constitute a judicial admission it must not only be a

formal statement of fact but must also be intentional, clear, and unambiguous." Id. at 361. The

Court finds that the defendant's assertion discussed immediately above satisfies the three

criteria. Therefore, no need exists, as Shim-Larkin urges, for the Court to "[establish] for

purposes of the action" "the fact that video bearing Bates No. DEFENDANT'S VIDEO 1 is 'the

video of Plaintiff which was taken on or about August 4, 2015 by Miguel Morel.'"

B. Rodriguez's February 13, 2020 Verification

Shim-Larkin's request that she be allowed to obtain, through discovery, all documents

Rodriguez used to aid the defendant in supplementing its response to Interrogatory No. 6, as well

as Rodriguez's telephone records for the period August 3, 2015, to September 7, 2015, because

Rodriguez's February 13, 2020 verification "does not state that he reviewed any document, such

as cell phone device, phone records, or email records, [and this] indicates lack of reasonable inquiry required before signing discovery response under FRCP 26(g)," is baseless.  Shim-Larkin failed to present any evidence establishing that Rodriguez used any documents or telephone records to prepare his verification or to assist the defendant in preparing its supplemental response to Interrogatory No. 6.  Furthermore, Rodriguez was free to rely upon his memory alone to assist the defendant in supplementing its interrogatory response and to prepare his verification, and Shim-Larkin has not made citation to any binding authority to the contrary. Even witnesses when testifying at trials are required to rely on their memories solely, and are permitted to use documents and other items to assist them in testifying only after their memories have been exhausted.  See, e. g., Bankers Trust Co. v. Publicker Industries, Inc., 641F.2d 1361, 1363 (2d Cir. 1981).

C. Kravitz's Deposition Testimony

"An answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence."  Fed. R. Civ. P. 33(c).  The defendant's supplementation of its response to Interrogatory No. 6 by relying on a question posed to Kravitz at his deposition to which an objection to the form of the question was lodged by it, has the potential for allowing the defendant to do indirectly what it may not do directly, to wit, respond to Shim-Larkin's interrogatories with an objection.  Should the objection to the form of the question made by the defendant at Kravitz's deposition be sustained at the trial of this action, neither the question nor the answer would be able to be used as evidence by the parties. This is so because neither the question nor the answer standing alone is evidence.  Rather, as jurors are routinely instructed, it is the question coupled with the answer that is evidence.  See, e.g., Vigil v. Rivera, No. 07-CV-1720, 2008 WL 1902687 at *13 (E.D.N.Y. April 25, 2008).  Moreover, should the defendant's

42

objection be sustained at the trial, the presiding judicial officer would be required, to "the extent practicable, [to ensure] that inadmissible evidence is not suggested to the jury by any means." Fed. R. Evid. 103(d).  In the circumstance of this case, that would mean that if the defendant's objection to the form of the question put to Kravitz at his deposition is sustained at the trial, Shim-Larkin would be foreclosed, perforce of  Fed. R. Civ. P. 33(c), from using that portion of the defendant's supplemental response to Interrogatory No. 6 that relies upon Kravitz's deposition testimony.  Furthermore, the defendant will have circumvented the Court's order that it respond fully to Shim-Larkin's interrogatories without asserting any objections.  The defendant placed Shim-Larkin in an untenable position because the completeness of its supplemental response to Interrogatory No. 6 is contingent upon an unknown: whether its objection to the form of the question Kravitz was asked to answer at his deposition will be sustained by the court.  The defendant's obligation, perforce of the Court's order and Fed. R. Civ. P. 33(b)(3), is to respond to Shim-Larkin's Interrogatory No. 6 fully; a contingent response does not fulfill that obligation.

D. JR's December 20, 2019 Verification

Shim-Larkin's assertion, that the defendant's determination to allow JR to rely only on his memory to verify its supplemental response to Interrogatory No. 6 "does not meet the reasonable inquiry standard under FRCP 26(g)," is meritless.  This is so for the same reasons the Court discussed above when it addressed a similar protest made by Shim-Larkin respecting Rodriguez's February 13, 2020 verification.  No need exists to reproduce those reasons here.

E. Defendant's Objections to Interrogatories After August 23, 2017

The Court ordered the defendant, on August 23, 2017, to respond to Shim-Larkins's First Set of Interrogatories without asserting any objections.  The motion record establishes that the

defendant disobeyed the order.  The defendant, through its August 27, 2019 and October 15, 2019 Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories, each of which was signed by Saint-Fort and verified by various employees of the defendant, asserts multiple objections to Shim-Larkin's First Set of Interrogatories.  Each of those documents explains that the "general statements and objections apply to all of Plaintiff's discovery requests, in addition to Defendant's specific objection responses and objections, and are incorporated by reference into each and every response set forth below."  Docket Entry No. 628-1,¶ 7; Docket Entry No. 604-8, ¶ 7.  The defendant's assertion of objections to Shim-Larkin's First Set of Interrogatories, after it was directed not to do so by the Court through the August 23, 2017 order, is willful and sanctionable misconduct, and evidences bad faith on the part of the defendant.  By signing the two documents, Saint-Fort certified, among other things, that the defendant's August 27 and October 15, 2019 supplemental interrogatory responses "were not interposed for an improper purpose, such as to harass."  Fed. R. Civ. P. 26(g).  However, by asserting objections to Shim-Larkin's First Set of Interrogatories in defiance of the Court's order that it not do so is, at a minimum, harassing conduct.  The Court notes that no justification or explanation for this conduct by the defendant or its counsel appears in the motion record.

F. Defendant's Supplemental Responses and Objections Caption

The defendant captioned its supplemental responses to Shim-Larkin's First Set of Interrogatories repeatedly with the phrase "Supplemental Responses and Objections," after it was ordered to respond to those interrogatories without asserting any objections.  The defendant maintains that using that phrase did not violate the Court's August 23, 2017 order because no objections, as contemplated by Fed. R. Civ. P.33(b)(4), were asserted in its supplemental responses to the interrogatories.  The defendant is wrong.  As discussed immediately above in

section E, on some occasions, after August 23, 2017, ( August 27 and October 15, 2019)  the defendant asserted objections in its supplemental responses to Shim-Larkin's First Set of Interrogatories and indicated that its objections applied to every supplemental response it was making at the relevant time.  On other occasions, the defendant used the phrase with its supplemental responses to Shim-Larkin's First Set of Interrogatories, but did not assert any objections.  However, nowhere in its opposition to the instant motion did the defendant explain its purpose in using the word "Objections" in the caption of its supplemental responses on those occasions when it did not assert any objections.  The unwarranted inclusion of that word in the caption of the defendant's supplemental responses to Shim-Larkin's interrogatories given the: (i) Court's August 23, 2017 order that the defendant respond to Shim-Larkin's First Set of Interrogatories without asserting any objections; and (ii) contentious nature that has attended the pretrial discovery phase of this action, permits the reasonable inference to be drawn by the Court that the defendant's unwarranted use of the word "Objections" was for an improper purpose: to harass Shim-Larkin.  This too is bad faith conduct.

## SANCTIONS

As noted above, the Court finds that the: 1) defendant violated the Court's August 23, 2017 order; and 2) defendant's counsel violated Fed. R. Civ. P. 26(g).  Based on the motion record, the conduct of the defendant and its counsel was without substantial justification, warranting sanctions.  Therefore, in accordance with Fed. R. Civ. P. 37(b)(2) and pursuant to the Court's inherent power to control the proceedings before it, for failing to obey the Court's August 23, 2017 order, the defendant shall, on or before September 29, 2020, pay to the Clerk of Court $1,500.  Unfortunately, this is not the first time that the Court has determined to impose a sanction on the defendant for misconduct during the pretrial discovery phase of this action. The

45

Court finds that the $1,500 sanction is not more severe than reasonably necessary to deter the defendant specifically, and others similarly situated to it generally, from engaging in the type of misconduct described above.

In accordance with Fed. R. Civ. P. 26(g)(3) and pursuant to the Court's inherent power to control the proceedings before it, for the Fed. R. Civ. P. 26(g) certification violations described above, the defendant and Saint-Fort together shall, on or before September 29, 2020, pay to the Clerk of Court $2,500.  Unfortunately, this is not the first time that the  Court has determined that counsel to the defendant has committed a Fed. R. Civ. P. 26(g) certification violation during the pretrial discovery phase of this action.  The Court finds that, given the certification violation history in this action, the $2,500 sanction is not more severe than reasonably necessary to deter the defendant's counsel and the defendant from engaging in bad faith conduct of the type described above in the future.  That conduct has frustrated, unjustifiably, the just, speedy and economical progression and resolution of this action.  See Fed. R. Civ. P. 1.

Pursuant to Fed. R. Civ. P. 26(g)(3) and Fed. R. Civ. P.37(b)(2)(C) the defendant and its counsel shall pay to Shim-Larkin the reasonable expenses she incurred caused by the Fed. R. Civ. P. 26(g) certification violation, and the failure by the defendant to obey the Court's August 23, 2017 order.  On or before September 29, 2020, Shim-Larkin shall file evidence, via affidavit or other means, of the reasonable expenses referenced immediately above that she incurred.  Any challenge by the defendant to the reasonableness of the expenses shall be filed on or before October 13, 2020.

## C6ONCLUSION

For the reasons set forth above, Shim-Larkin's sanction motion, Docket Entry No. 602, is

granted.

Dated: New York, New York                SO ORDERED:
       September 14, 2020

                                        KEVIN NATHANIEL FOX
                                        UNITED STATES MAGISTRATE JUDGE