UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Heena Shim-Larkin,

                Plaintiff,

     –v–

City of New York,

                Defendant.

16-cv-6099 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

## I. BACKGROUND

The Court assumes the parties' familiarity with the facts and recounts them only briefly. Plaintiff Heena Shim-Larkin is a former seasonal lifeguard with the New York City Department of Parks and Recreation (DPR) at the Tompkins Square Mini Pool for about eight weeks in the summer of 2015. During this brief period of employment, she contends that her co-workers and supervisor discriminated against her on the basis of national origin, race, disability, and her status as a domestic-violence victim. As a result, Ms. Shim-Larkin alleges that she was forced to resign from her seasonal position before her term ended, though DPR again employed Plaintiff the following summer. *See* Dkt. No. 30 (Amended Complaint).

This case began in 2016, but the parties are still in the midst of disputes relating to discovery, even though discovery has formally concluded. This case is referred for General Pretrial Management to Magistrate Judge Fox. Both parties have raised a slew of objections to decisions made by Judge Fox regarding discovery and sanctions, and the Court now addresses those objections.

1

## II.   THE MAGISTRATE JUDGE'S DECISIONS REGARDING THE PARTIES DISCOVERY DISPUTES ARE AFFIRMED

### A. Legal Standard

A magistrate judge possesses wide discretion in handling discovery disputes. *Auto. Club of New York, Inc. v. The Port Auth. Of New York & New Jersey*, No. 11-cv-6746 (RKE), 2015 WL 3404000, at *2 (S.D.N.Y. May 27, 2015). Given this broad discretion, "[a] party seeking to overturn a discovery order bears a heavy burden." *AP Links, LLC v. Global Golf Inc.*, No. 08 Civ. 1730, 2011 WL 888261, at *4 (E.D.N.Y. Mar 14, 2011) (internal citations omitted).

When a magistrate judge enters a non-dispositive order like a discovery order, and a party objects, a district court "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A); *Thomas E. Hoar v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (pre-trial discovery issues are generally considered non-dispositive matters); *Sheikan v. Lenox Hill Hospital*, 98-cv-6468, 1999 WL 386714, *1 (S.D.N.Y. June 11, 1999) (Rule 72(a) standard applies to discovery orders). A finding is "clearly erroneous" when "on the entire evidence, the district court is left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 243 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)) (internal quotation marks omitted). A finding is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Thompson v. Keane*, No. 95 Civ. 2442 (SHS), 1996 WL 229887, at *1 (S.D.N.Y. May 6, 1996) (quoting *Securities and Exchange Comm'n v. Thrasher*, No. 92-cv-6987 (JFK), 1995 WL 456402 at *12 (S.D.N.Y. Aug. 2, 1995)) (internal quotation marks omitted).

**B. The Magistrate Judge Did Not Clearly Err in his August 16, 2019 Orders**

    **1. Background**

The Court begins with Ms. Shim-Larkin's objections to Judge Fox's August 16, 2019 conference and subsequent order. *See* Dkt. No. 531 (transcript of conference), 528 (ensuing order). Much of the controversy arises out of a deposition of Martin Kravitz, a Department of Parks and Recreation employee, held on December 5, 2017. *See* Dkt. No. 553, Ex. A (deposition excerpts). The Court appointed Ms. Shim-Larkin counsel for purposes of the deposition. Plaintiff has now challenged portions of this deposition for years. *See, e.g.*, Dkt. No. 240 (Shim-Larkin seeking sanctions because of a city attorney's behavior during this deposition in April 2018); Dkt. No. 385 (denying sanctions). In one of Plaintiff's letters that precipitated the August 16, 2019 conference, she argued that the City attorney "interrupted and illegally coached the deponent" and had committed fraud upon the Court by "misrepresent[ing] . . . facts" in letters to the Court. Dkt. No. 519 at 6. Shim-Larkin argues that these interruptions and coaching prevented her from obtaining information from Kravitz about his knowledge of 311 complaints regarding Tompkins Square Mini Pool. In terms of relief, she sought various adverse-inference instructions and "reasonable expenses and attorney's fees for partial or entire deposition of Kravitz." Dkt. No. 519.

At the August 16, 2019 conference, Magistrate Judge Fox addressed Ms. Shim-Larkin's concerns about the Kravitz deposition. Specifically, he considered Ms. Shim-Larkin's request for an adverse inference to be drawn from Kravitz's testimony, but did not impose such an adverse inference. *See* Dkt. No. 531 15–16 (discussing Shim-Larkin's request); Dkt. No. 528 (not imposing an adverse inference). Judge Fox also made several statements, which Shim-Larkin characterizes as "oral orders," Dkt. No. 536 at 4, about the Kravitz deposition. For example, he noted that Shim-Larkin could have followed up with certain lines of questioning but

3

failed to do so, and she could not rely on the objections process to get a second bite at the apple. *See* Dkt. No. 531 at 18:8–16 (Shim Larkin: "we could have asked [Kravitz] about the sources about his belief . . . we could dig in more . . . ." The Court: "Well, you could have done that [at the deposition], but your attorney did not.").

In her objections, Shim-Larkin again challenges defense counsel's purported misconduct in the Kravitz deposition. *See* Dkt. No. 536 at 6–8 (summarizing caselaw prohibiting attorneys defending a deposition from coaching witnesses or answering questions for them). She alleges that because defense counsel interrupted Kravitz, she was not able to complete a line of questioning regarding information Kravitz may have known about how the City processes and reports 311 complaints. *Id.* at 8–9 ("Plaintiff lost an opportunity to learn the truth about why Kravitz believes that 311 complaints are actually being monitored due to [defense counsel's] improper coaching.").

### 2. No Clear Error

As noted, Ms. Shim-Larkin bears a heavy burden in challenging the Magistrate Judge's discovery rulings. *Samad Bros., Inc. v. Bokara Rug Co., Inc.*, No. 09-cv-5843 (JFK), 2010 WL 5095356, at *1 (S.D.N.Y. Dec. 13, 2010). Here, she has failed to satisfy that burden. To start, the Magistrate Judge did not err, let alone clearly err, in determining that the City did not engage in misconduct during the Kravitz deposition and that no adverse inference was warranted. The City's questions were not leading and did not prompt objection from Plaintiff's counsel. *See* Dkt. No. 209, Ex. 2. Similarly, nothing in the record supports Ms. Shim-Larkin's contention that the City attorneys impermissibly "coached" Kravitz. *Id.* And even if the Court accepts that the City attorney "interrupted" Kravitz, as Ms. Shim-Larkin contends, nothing prevented Ms. Shim-Larkin from returning to the topics she felt needed further inquiry during the deposition. Indeed,

4

Magistrate Judge Fox made precisely this point in denying Ms. Shim-Larkin's requests. *See* Dkt. No. 531 at 18. Having considered Ms. Shim-Larkin's arguments, the Court discerns no clear error in Magistrate Judge Fox's August 16, 2019 conference and subsequent order, Dkt. Nos. 528 and 531, affirms them in full, and thus denies Ms. Shim-Larkin's objections at Dkt. No. 536.[1]

### C. The Magistrate Judge Did Not Clearly Err in his November 27, 2019 Decision

#### 1. Background

The Court next addresses Ms. Shim-Larkin's objections to several orders by the Magistrate Judge at a November 27, 2019 conference. *See* Dkt. Nos. 586, 587. As far back as 2017, Ms. Shim-Larkin has sought further information from the City about its 311 complaint report process. Dkt. No. 600 at 3–4 (briefly recapping this procedural history). The City has provided certain 311 complaints that mention words like "Tompkins" (the park at which Ms. Shim-Larkin worked). *Id.* However, Plaintiff has attempted to obtain not only more 311 complaints, but also the City's records regarding how such complaints are recorded and generated. *Id.* at 4–5.

At the August 16, 2019 conference the Court discussed earlier, the Magistrate Judge examined and ruled upon purported deficiencies identified by Ms. Shim-Larkin in the City's 311-related disclosures. After thorough discussion and hearing from both parties, Judge Fox ordered the City to provide Ms. Shim-Larkin with declarations from City employees that would permit her to understand how the complaint procedure works. In September 2019, the City provided Plaintiff with declarations from two of its employees about this process. In particular, the City provided a declaration from the Department of Parks and Recreation's Senior Correspondence Coordinator and an Assistant Legal Service Manager at New York City 311. *Id.*

---

[1] Ms. Shim-Larkin also objects to Magistrate Judge Fox's rulings regarding discovery about 311 complaints and the City's purported lack of compliance with its discovery obligations, and the Court addresses these objections below.

5

at 5. And two months later, in response to objections from Ms. Shim-Larkin, the City provided a supplemental declaration from an Assistant Counsel in the Parks Department further clarifying this process. *Id.* at 5–6.

Soon after, on November 27, 2019, Judge Fox held a conference at Plaintiff's request. *See* Dkt. No. 573. At that conference, Judge Fox made a series of rulings: He held that Plaintiff was not entitled to various other City documents because they did not relate to her claim. He held that Plaintiff was not entitled to an adverse inference instruction that a City training manual had not changed for more than a decade. He rejected Plaintiff's argument that the City had destroyed evidence. He stated that any sanctions motion brought by Plaintiff against the City would be frivolous. And he determined that the City's declarations adequately responded to his August 2019 order. Plaintiff now objects to these decisions. *See id.*

### 2. No Clear Error

The Court reiterates that Ms. Shim-Larkin faces a high burden when challenging non-dispositive decisions of the Magistrate Judge like the ones at issue here. *Khaldei v. Kaspiev*, 961 F. Supp. 2d 572, 575 (S.D.N.Y. 2013) ("This is a highly deferential standard, and the objector thus carries a heavy burden."). None of Plaintiff's objections satisfy this burden.

To begin, the City complied with the August 2019 order, which required it to "provide competent evidence to the Plaintiff, via affidavit or other means, regarding 311 call center-related customer comment, general intake and workflow forms and reports including, but not limited to, how such forms and reports are generated when contact is made by members of the public, either via telephone or on-line to a 311 call center or directly to an agency of the defendant City of New York." Dkt. No. 528. In response, the City provided detailed declarations from three employees detailing the procedures for obtaining, receiving, and

6

retaining 311 complaints. *See* Dkt. No. 569, Ex. 3 (McCormack declaration describing the DPR's 311 process in detail); Dkt. No. 569, Ex. 4 (Rauen declaration describing how 311 is an "intake referral service" that transmits complaints to other City agencies). Nothing Plaintiff points to suggests internal inconsistency warranting further discovery, and her citations to principles of contract law are wholly inapt here, as these declarations are not contracts. In short, the Magistrate Judge correctly held that these declarations "capture the information that [the Court had] hoped would be captured" when the August 2019 order was issued. Dkt. No. 573 at 36:6-10. And although the Court does not find it necessary to rule on this point, it nonetheless notes that the City is likely correct that these documents have little relevance to Plaintiff's claims, Dkt. No. 600 at 11. Ms. Shim-Larkin has benefited from extraordinarily wide-ranging discovery about the City's 311 practices, and the Court rejects her arguments to the contrary.

Next, the Magistrate Judge properly denied Plaintiff's request for an adverse inference instruction on the basis of spoliation. "A party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012) (cleaned up). Even on de novo review, Ms. Shim-Larkin has not satisfied these requirements. As the Magistrate Judge noted, there is no evidence that the form Plaintiff contests ever existed, she has not demonstrated that the City was under any obligation to preserve any such document even if it did exist, and she is already in possession of all available information regarding this issue. The Magistrate Judge certainly did not clearly err in denying Ms. Shim-Larkin's requests.

Likewise, the Magistrate Judge properly denied Plaintiff's request for further discovery. Contrary to Ms. Shim-Larkin's contentions, the City is correct that its declarations were not ambiguous or incomplete, and certainly do not warrant more than the substantial documentation the City has already provided. The Magistrate Judge rightly rejected these requests. And the City's attorneys made reasonable inquiry into these issues; the Magistrate Judge again rightly noted that there is no colorable basis upon which Plaintiff could move for sanctions against defense counsel. In sum, and having considered Ms. Shim-Larkin's remaining arguments, the Court discerns no clear error in the Magistrate Judge's November 27 decision, affirms it in full, and thus denies Plaintiff's objections at Dkt. No. 586.

### D. The Magistrate Judge Did Not Clearly Err in His January 7, 2020 Decision

The Court next reviews Plaintiff's objections to the Magistrate Judge's January 7, 2020 decision. *See* Dkt. Nos. 594, 595. In brief, on September 16, 2019, the Magistrate Judge granted one of Ms. Shim-Larkin's motions for sanctions. *See* Dkt. No. 539. As part of the Order, Magistrate Judge Fox ordered that Plaintiff could recover from Defendant "the reasonable costs and expenses she incurred in connection with the motion." *Id.* at 23. He further ordered that Plaintiff must "file with the court evidence of those reasonable costs and expenses." *Id.* at 23–24.

Plaintiff then filed a declaration in support of her motion to award expenses, seeking $502.47. *See* Dkt. No. 555. Plaintiff listed five categories of expenses: (1) printing; (2) transportation and service; (3) internet usage; (4) laptop usage; and (5) phone bill. *Id.* On January 7, 2020, the Magistrate Judge awarded Plaintiff $114.90 in costs. Dkt. No. 580. Following a letter requesting clarification about the Order, the Magistrate Judge issued a subsequent order noting an error in the calculation of fees to be awarded to Plaintiff, awarding

8

Plaintiff an additional $35.10 in fees. *See* Dkt. No. 593. Plaintiff now objects, arguing, among other things, that she was improperly not awarded costs for certain travel, that the Magistrate Judge set the wrong cost per page of printing, and that she improperly denied reimbursement for internet usage, laptop usage, and her phone bill. *See* Dkt. Nos. 594, 595.

Plaintiff may be compensated for "[r]easonable and identifiable, out-of-pocket disbursements" for things like photocopying, travel, and telephone costs. *Trustees of Local 138, 138A & 138B Int'l Union of Operating Engineers Welfare Fund, Annuity Fund, Legal Fund, Vacation Fund, Apprenticeship Training Fund v. Early Bird Sweeping Contractors, Inc.*, No. 16-cv-1066 (ADS) (AYS), 2018 WL 7681481, at *4 (E.D.N.Y. Dec. 19, 2018), *report and recommendation adopted*, 2019 WL 1262747 (E.D.N.Y. Mar. 19, 2019); *see also Kuzma v. I.R.S.*, 821 F.2d 930, 933-34 (2d Cir. 1987) ("[i]dentifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs."). And the party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested." *Ganci v. U.S. Limousine Serv. Ltd.*, No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (internal quotation marks omitted).

As above, Plaintiff has failed to satisfy her high standard of demonstrating clear error in the Magistrate Judge's thorough decision. The Magistrate Judge correctly held that Plaintiff could not recover expenses for travel before January 18, 2018, because she had no basis for her spoliation motion before that date. Similarly, the Magistrate Judge was right in concluding that Plaintiff failed to submit any proof of her actual printing costs and thus the price of her printing was reasonable. Finally, the Magistrate Judge properly denied Plaintiff's claims for internet usage, laptop usage, and her phone bill, as she had not demonstrated that any of those costs

9

would have been any different if she had not filed her motion for sanctions. Plaintiff's objections to Magistrate Judge Fox's decision, Dkt. No. 594, are thus denied.

### III. THE MAGISTRATE JUDGE'S DECISIONS REGARDING SANCTIONS ARE AFFRIMED IN PART AND REVERSED IN PART

#### A. The City's Objections to the Magistrate Judge's February 5, 2019 Decision Are Granted

##### 1. Background

The convoluted underpinnings of the first sanctions dispute go back more than three years. In April 2017, Plaintiff served her first set of interrogatories upon the City, requesting identifying information for a number of individuals and purported practices of the City. As relevant here, Ms. Shim-Larkin sought contact information for both named individuals and individuals whom she described in general terms. She specifically sought contact information for "PAA [Police Administrative Aid] Demuth, Jasmine" and "PAA Jasmine Demuth's supervisor who was at the 13th precinct next to PAA Demuth when Plaintiff was interacting with PAA Demuth (Possibly a sergeant, Caucasian male)." Dkt. No. 165, Ex. 1. The City responded to those interrogatories on August 3, 2017, asserting various objections and providing contact information for some individuals, but not providing any information for "PAA Demuth, Jasmine" and "PAA Demuth's supervisor." Dkt. No. 165, Ex. 2. The City's former counsel in this case, Scott Silverman, signed the Defendant's response and certified, under Federal Rule of Civil Procedure 26(g)(1), that he had made a reasonable inquiry in response to Plaintiff's request. *Id.* at 9. Mr. Silverman has since withdrawn his appearance in this case, and the Magistrate Judge granted that withdrawal. Dkt. Nos. 120, 131. On August 22, 2017, the City made supplemental responses to Plaintiff's interrogatories. Dkt. No. 190, Ex. 2. Those responses included contact information for PAA Jasmine Demuth. *Id.* at 4. Following an August 22

10

conference with the Magistrate Judge, the City provided additional responses on August 24. Dkt. No. 132, Ex. 1.

Despite the City's three sets of responses, Plaintiff continued to contend that the City had not satisfied its discovery obligations. In December 2017, therefore, Plaintiff moved for sanctions, arguing that the City had failed to comply with the Magistrate Judge's August 22 orders. Dkt. Nos. 152, 153, 154.

The Magistrate Judge granted in part and denied in part Plaintiff's motion for sanctions. Dkt. No. 319. The City objected and Plaintiff cross-moved for sanctions, and this Court eventually affirmed the Magistrate Judge's decision in part and denied the sanctions motion. Dkt. No. 492. Importantly, in connection with the City's objections, defense counsel Dominique F. Saint-Fort filed a declaration dated August 3, 2018. *See* Dkt. No. 352. That declaration described the City's efforts to identify the individual Plaintiff identified as "PAA Demuth's supervisor." *Id.* ¶¶ 10, 15, 17–18, 25–30. Saint-Fort recounted that the City's efforts at identifying this individual were hampered by the trickling manner in which Ms. Shim-Larkin provided information. With the additional information Plaintiff provided, the City requested a roll call of the Thirteenth Precinct on the relevant day and spoke with a number of employees, and learned that only one the employees on duty fit the bill, Lieutenant Bekim Kalicovic.

In August 2018, even though discovery had formally closed, Plaintiff requested a roll call for the Thirteenth Precinct for the day in question. Upon review, Plaintiff emailed defense counsel stating that "PAA Demuth's supervisor" could be Kalicovic. Dkt. No. 476 at 9. However, Plaintiff had been provided the name of Lieutenant Kalicovic as early as March 2017. *Id.* Plaintiff then moved for sanctions, seeking to (1) strike the purportedly "perjurious declaration" submitted by the City on August 3, 2018, Dkt. No. 352, (2) obtain a Court order

11

permitting her to depose Kalicovic at the City's expense and provide her with various documents, and (3) direct that certain facts be deemed admitted. Dkt. No. 372.  Soon after, the Magistrate Judge required the City to turn over photographs of Kalicovic and one other individual, even though discovery had long closed.  Dkt. No. 420 ¶ 1.

The Court now turns to the decision on review here.  On February 5, 2019, the Magistrate Judge issued his decision resolving Ms. Shim-Larkin's request for sanctions.  Dkt. No. 450.  The Magistrate Judge sanctioned Defendant and attorney Silverman, who had submitted the City's original response to Plaintiff's first interrogatories.  He concluded that upon his review of Saint-Fort's August 2018 declaration submitted along with Defendant's opposition to Plaintiff's motion for sanctions, Dkt. No. 379, the City had not begun investigation into "PAA Demuth's Supervisor's" identity until October 2017.  Dkt. No. 450 at 18.  He thus held that Silverman's representation in August 2017 that he had made inquiry into his identity was made without substantial justification or reasonable inquiry.  Specifically, the Magistrate Judge concluded that the "motion record establishes that Silverman's certification was made without substantial justification, because he did not make the requisite inquiry into the identity of the PAA's supervisor before signing the defendant's August 2017 response to Shim-Larkin's first set of interrogatories." *Id.*  And he explained "[t]his is clear because at paragraph 16 of the declaration Saint-Fort submitted . . . she states that the defendant did not commence its investigation into the identity of the PAA's supervisor until October 2017, two months after Silverman's certification was made." *Id.*  He therefore ordered "the defendant Silverman together shall . . . pay Shim-Larkin $1,000 . . . [and] the reasonable expenses she incurred in making the instant motion." *Id.* at 25–26.  The Magistrate Judge further reopened discovery to permit Ms. Shim-Larkin to depose Kalicovic and ordered the City to produce certain documents

12

in advance of the deposition. *Id.* at 23–24. Finally, the Magistrate Judge declined to deem any facts admitted or conclude that any of the Defendant's submission constituted perjury. *Id.* at 24–25. The City now objects. Dkt. No. 476.

### 2. The Magistrate Judge Clearly Erred

Because this is a non-dispositive matter, the Court may set aside the Magistrate Judge's decision only insofar as it "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The Court recounted this standard above, and does not repeat it here. Although this is a high standard for an objector to satisfy, the Court concludes that the City has met it here and reversal is warranted.

To begin, the City is correct that the Magistrate Judge sanctioned Silverman without affording him notice or an opportunity to be heard. In September 2017, Silverman had moved to withdraw from the case, Dkt. No. 121, and the Magistrate Judge granted his motion over Plaintiff's objection on October 19, 2017. Dkt. No. 131. Silverman therefore had not been involved in the case for more than one year when the Magistrate Judge issued his decision. He thus had no notice that sanctions could be levied against him. Indeed, Ms. Shim-Larkin's motion did not even seek sanctions against Silverman; the Court imposed them sua sponte. *See* Dkt. No. 372. This failure to notify Silverman and provide him an opportunity to be heard violated his due process rights and is thus clearly contrary to law, and the Magistrate Judge's decision warrants reversal for this reason alone. *See Wilson v. Citigroup, N.A.*, 702 F.3d 720, 724 (2d Cir. 2012) (concluding that the District Court "abused its discretion in imposing the severe sanction of attorney's fees without making an explicit finding that [counsel] acted in bad faith or affording [counsel] adequate notice and an opportunity to be heard on the matter," and reversing that decision); *United States v. Seltzer*, 227 F.3d 36, 42–43 (2d Cir. 2000) (ordering district court

13

to provide attorney with "specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on the matter" before imposing sanctions (cleaned up)).

Next, the Magistrate Judge rested his decision on an incomplete view of the factual record.  Rule 26(g) requires that discovery responses be signed by an attorney of record and specifies that, "[b]y signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry."  And the Advisory Committee's Notes further explain that this inquiry must be "reasonable under the circumstances" and is judged by a "totality of the circumstances" test.  However, as the Defendant has explained and defense counsel has now represented in multiple declarations, *see, e.g.*, Dkt. No. 477, Silverman did take reasonable steps to identify the person Plaintiff described as "PAA Demuth's supervisor" before signing the August 2017 interrogatory responses.  Specifically, he spoke with NYPD personnel on at least two occasions at the Thirteenth Precinct to determine the identify of this individual.  *See id.* ¶ 9.  It was only *after* Ms. Shim-Larkin provided additional identifying information that the City was able to narrow down the individuals who could fit the bill and identify Lieutenant Kalicovic.  Given the extraordinary scope and length of discovery in this manner, the self-contradictory and vague descriptions provided by Ms. Shim-Larkin in her first interrogatory and subsequently, *see, e.g.*, Dkt. No. 476 at 22–23, the highly tenuous connection Lt. Kalicovic bears to this litigation even accepting Ms. Shim-Larkin's narrative as true, and the City's good faith efforts, the Court concludes as a matter of law that the City acted reasonably under the Federal Rules, and its conduct does not warrant the significant sanction imposed.  The Magistrate Judge thus clearly erred in imposing these sanctions.  *See Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB) (HBP), 2016 WL

616386, \*\*18–20 (S.D.N.Y. Feb. 16, 2016). And given these conclusions, it follows that discovery should not be reopened to permit Ms. Shim-Larkin to depose Lt. Kalicovic.

In sum, although the bar for reversal is high, the Court is "left . . . with the definite and firm conviction that a mistake has been committed." *Nike, Inc. v. Wu*, 349 F. Supp. 3d 346, 353 (S.D.N.Y. 2018) (cleaned up); *see also* Arista Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010). The Court thus grants Defendant's objections to Magistrate Judge Fox's order, Dkt. No. 476, and vacates that order to the extent it is inconsistent with this opinion.

### B. The Magistrate Judge's September 16, 2019 Decision, Dkt. No. 540, is Affirmed in Part and Reversed in Part

#### 1. Background

The Magistrate Judge's next relevant opinion arises out of the same factual background. In August 2018, Plaintiff moved for sanctions because of a purportedly "perjurious declaration" submitted by the City and the City's alleged failure to provide her certain documents. Dkt. Nos. 372–374. In support of Defendant's opposition, defense counsel, Saint-Fort, submitted a declaration in which she included a timeline into the City's investigation into Plaintiff's first set of interrogatories, in which Plaintiff sought contact information for "PAA Demuth's supervisor who was at the 13th precinct next to PAA Demuth when Plaintiff was interacting with PAA Demuth (Possibly a sergeant, Caucasian male)." Dkt. No. 165-1 at 1. In that declaration, Saint-Fort made the following statement: "during [an August 8, 2018 'meet and confer'] conversation, Plaintiff stated for the first time that the individual she seeks to identify could have been a Captain or a higher ranking individual that would not be on the roll call, but would be located on the command log." Dkt. No. 379 ¶ 38. That statement was included in the City's memorandum of law. Dkt. No. 378 at 9. Defense counsel made the same representation in a subsequent conference. *See* Dkt. No. 557 at 4.

In February 2019, the Magistrate Judge granted in part and denied in part Plaintiff's August 2018 request for sanctions. *See* Dkt. Nos. 372–374, 450. Magistrate Judge Fox noted that Plaintiff informed Defendant through a January 9, 2018 reply brief and a July 20, 2018 declaration that "PAA Demuth's supervisor" could have held the rank of lieutenant or higher. *See* Dkt. No. 450 at 21. Defendant objected, and in Ms. Saint-Fort's declaration, she repeated the statement that during an August 8, 2018 meet and confer conversation with Plaintiff, "Plaintiff stated for the first time that the individual she seeks to identify could have been a Captain or a higher ranking individual that would not be on the roll call, but would be located on the command log." Dkt. No. 468 ¶ 38; *see also* Dkt. No. 467 at 10.

In June 2019, Magistrate Judge Fox issued an order directing Saint-Fort to "show cause, in writing, why repeating and relying on the debunked factual contention referenced . . . in her declaration [dated February 27, 2019] and the memorandum of law that was submitted to the Court, in opposition to Shim-Larkin's 'Supplemental Notice of Motion for Sanctions' did not violate F. R. Civ. P. 11(b)." Dkt. No. 510. Saint-Fort filed a declaration outlining the sequence of events leading to the February 2019 declaration and a memorandum of law arguing that she should not be sanctioned. Dkt. Nos. 512, 513. She argued that her representation in the February 2019 filings was a mistake, she did not act in bad faith, and that Plaintiff was not prejudiced by the error. *Id.*

On September 16, 2019, the Magistrate Judge sanctioned Saint-Fort. He noted that "the plaintiff advised the defendant, through her January 9, 2018 reply brief and July 20, 2018 declaration 'that the PAA's supervisor could hold the rank of lieutenant or higher including the rank of captain because the supervisor wore a white shirt.'" Dkt. No. 540 at 17 (quoting Dkt. No. 450 at 21). Magistrate Judge Fox therefore ordered Ms. Saint-Fort to pay $500.00 to the

16

Clerk of Court and distribute a copy of his decision to "1) the acting corporation counsel [in the New York City Law Department], 2) Saint-Fort's supervisor, and 3) every attorney within the New York City Law Department, Labor & Employment Law Division." Dkt. No. 540 at 22. He further "reprimand[ed] Saint-Fort for her misconduct." *Id.* And he ordered her to "file an affidavit, with the Clerk of Court, certifying that she complied with this order" within 14 days. *Id.* The City then sought a stay of Magistrate Judge Fox's decision, and this Court granted a stay. Dkt. No. 547.

### 2. The Magistrate Judge's Decision is Affirmed in Part

Rule 11(c)(4) provides that "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." The Court does not find clear error in the Magistrate Judge's sanction requiring Ms. Saint-Fort to pay $500 to the Clerk of Court, as that is reasonably understood as serving the goals of specific deterrence. The same is true of the Magistrate Judge's formal reprimand. Ms. Saint-Fort repeatedly made a representation to the Court as factually true when the Court had rejected that very representation. Even though the procedural history of this case is complex, Saint-Fort's explanations for this oversight, such as this being a "sincere mistake" and a product of "negligence," do not excuse the conduct. *See* Dkt. No. 557 at 13.

However, the Magistrate Judge's remaining sanction—requiring Saint-Fort to distribute a copy of the decision to dozens of attorneys with whom she works—cannot be upheld. Rule 11 *requires* courts to impose the narrowest possible ground for sanction as possible in this circumstance. This extraordinary sanction goes too far, and is not required, given the under sanctions, to serve the goals of either general or specific deterrence. Indeed, neither the Magistrate Judge nor Ms. Shim-Larkin cite any analogous case in which such an extreme

17

sanction was imposed. The sanction would cause Saint-Fort significant reputational harm, yet the Court discerns little if any service of the broader goals of specific and general deterrence. The Court therefore grants the City's objections as to this particular sanction, and reverses the Magistrate Judge's second sanction. *See* Dkt. No. 540 at 22 ("(2) Saint-Fort shall distribute a copy of this order to: 1) the acting corporation counsel, 2) Saint-Fort's supervisor, and 3) every attorney within the New York City Law Department, Labor & Employment Law Division." The Court however denies the City's remaining objections and affirms the remainder of the Magistrate Judge's decision.

## IV. CONCLUSION

For the reasons stated above, the Court denies Plaintiff's objections at Dkt. No. 536. The Court denies Plaintiff's objections at Dkt. No. 586. The Court denies Plaintiff's objections at Dkt. No. 594. The Court grants Defendant's objections at Dkt. No. 476. The Court grants in part and denies in part Defendant's objections at Dkt. No. 557.

SO ORDERED.

Dated: September 28, 2020
       New York, New York

_____
ALISON J. NATHAN
United States District Judge